FILED

# UNITED STATES DISTRICT COURT FOR
# THE MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

2013 DEC 10  PM 2: 51

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA FLORIDA

| | |
|---|---|
| William Todd Overcash, M.D., Plaintiff, | § CIVIL ACTION NUMBER: §  § §  5:13-CV-606-OC-22 PRL § Defendant William Todd Overcash, M.D. |
| v. | § Notice of Civil Rights Removal pursuant § to 28 U.S.C. §1443 and Rule 11(b)(2) § and 42 USC 12101 of the Federal Rules |
| Attorney Mark Shelnutt Senior Judge Barbara Gurrola Lori A. Foultz, Defendant, | § of Civil Procedure from the §  § FLORIDA 5TH JUDICIAL CIRCUIT § in and for MARION COUNTY (Ocala) |
| In the Interest of N.E.O., a minor In the Matter of the Adoption of N.E.O. a minor child (related cases) | § DOCKET NOS.: 2002-4655-DR-FJ, § 2013-DP-0019, & 2013-DR-4392-FK § |

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:


1. Comes now the Defendant William Todd Overcash, M.D., an upper middle class white male Christian American citizen, with this Notice of Removal pursuant to 28 U.S.C. §1443(1) and Rule 11(b)(2) of the Federal Rules of Civil Procedure, complaining of policies having the force and effect of law in the State of Florida to construe Florida statutes in such a manner as to suppress, oppress and obliterate the rights of a disabled male in America, by and through the anti-male and anti-traditional nuclear family application of Florida Domestic Relations & Dependency Codes in the Florida.

This action arises under the Americans with Disabilities Act, to correct the unlawful policies and practices imposed by Defendants Mark Shelnutt and Senior Judge Gurrola ("Defendants") and alleges as follows:

## I. INTRODUCTION

1.  William Todd Overcash, MD with physical disabilities presents to the court as a disabled male that is paid disability income, however, the opposing attorney, Mark Shelnutt and Senior Judge Gurrola refusal to provide accommodations' for his disabilities can properly prepare for trials, Opposition to motions, Denial of Due Process, deprived of his disability Income to support his own legal counsel, and not be subject to mental abuses and other litigation matters that was and is pending before Florida 5th District Courts in Marion County Florida, Ordered to return to full time as a surgeon, and to which he is being precluded from fully participating in, in part, due to his disabilities.

2.  Under the Americans with Disabilities Act, and corresponding State of Florida laws, the Federal and State Governments mandates for Defendants to provide accommodations to court proceedings where such accommodations are reasonable.

3.  Since the Plaintiffs have prevailed in State of Florida Court of Appeals in disqualifying one of Defendants' state court judges from their case, the Defendants have repeatedly implemented a practice and routine which denies Plaintiffs any accommodations for his disabilities.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 USC § 1331. Plaintiffs' claims are authorized by 28 USC §§ 2201, 2202 and by 42 USC §§12101 et seq. (including § 12181 et seq.) ADA §§ 2 et seq. Pursuant to pendant jurisdiction, an attendant and related causes of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under Civil Rights Act and Disabled Persons Act. Venue is appropriate because the events took place in Marion County, Florida.

## III. PARTIES

5. Plaintiff WILLIAM TODD OVERCASH, MD is a resident of Marion County, Florida. He is also the Father of Natasha Overcash and former husband of Lori A. Foultz. He is also a qualified person with disabilities under ADA.

6. Defendant Lori A. Foultz is a former wife and Mother of Natasha Overcash. She is sued in her individual capacities.

7. Mark Shelnutt is defendant's legal counsel for Lori A. Foultz. He is currently under review by the Florida Bar. He is sued in his individual and official capacities.

8. Defendant Senior Judge Barbara Gurrola is a Marion County Circuit judge. She is fully responsible for her illegal conduct that violated U.S. Federal and State laws. She is sued in his individual and official capacities. She is located/works at Marion County Judicial Center, 110 NW First Ave., Ocala, FL 34475

# IV. FACTS

9.    Dr. Overcash has laparoscopic wrist syndrome, short term memory deficit, and PTSD/LAS (post-traumatic stress syndrome/legal abuse syndrome and other diagnosed disabilities, and as a consequence, in part, is unable to attend, or participate in, certain matters which requires repeated stressful use of his wrists, dependency on short term memory (surgical performance), or exposure to repeated attack upon his disability by the courts and opposing attorney with absolute proof of violation of the law and false presentation of evidence. He should not be subjected to abnormal stresses such as hostilities, verbal assaults and needs non-stressful environments, all of which leads to mental distress.

10.    From until 1988, Dr. Overcash worked as a practicing Physician and was diagnosed with his permanent disabilities starting in 2002 and was declared as being unable to work as a surgeon in 2010.

11.    In 1999, William Todd Overcash, MD married Lori Foultz and in 2001 and the couple had the 1st and only child Natasha Overcash.

12.    In Lori Foultz, filed divorce 2002 and the completion of the divorce was in 2006.

13.    Judge Sweigert was recused in 2012 and Judge Gurrola was appointed

14.    All Judges except for Judge Sweigert and Judge Gurrola have upheld the couple's prenuptial agreement.

15.    Opposing Attorney Mark Shelnutt and Senior Judge Gurrola has ordered demanding William Todd Overcash MD should cease drawing disability and return to full time work.

16.   William Todd Overcash, MD is ordered not to pay property taxes that he must pay the wife's attorney from his disability income or will be place in debtor's prison for not paying her attorney's fees.

17.   William Todd Overcash is discriminated because he is not allowed to pay for his attorney's, his own food or feed his pets, as he is placed in threaten and put in jail when he is unable to pay for her attorney's fees from his disability income

18.   William Todd Overcash, MD is discriminated when he is denied his legal counsel in Circuit Court and place in debtor prison because he is unable to pay.

19.   William Todd Overcash, MD is discriminated as he is not allowed to review or receive the invoices of wife's opposing Attorney Mark Shelnutt.

20.   Under rule 18 U.S.C. § 1513 : US Code, Dr. Overcash has been attacked for being a whistleblower on a Judge within the Florida 5th Circuit and a physician and a previous hospital owner for either Doctor Shopping for controlled substances, for acting as a pill mill for profits to maintain the financial stability of the hospital.

21.  Under rule 18 U. S. C. § Sec. 1512:  US Code, As an act of retaliation Dr. Overcash was threatened by the attack upon his daughter's horse "Sassy" with large quantity of corrosive material as documented on National Television.

22.  Five days after the "puppet master" contacted a friend of Dr. Overcash and told him that Dr. Overcash needed to just walk away from his daughter and property or face further problems.

23.  This Threat came forth shortly after the recusal of the "doctor shopping" judge of the 5th Circuit which had been made over 6 months earlier to the 5th DCA due to

said judge's failure to follow rules of recusal as defined by the Florida Supreme Court.  Please note that said recusal order by the 5th DCA came forward shortly after the FDLE had been informed of the Judge's behavior.

24.  Constitutional Amendment 7 guarantees you to a trial by jury in any case that has possible penalty of 20 dollars or per recent federal statutes any trial that could sentence you to greater than 6 months in jail.

25.  Considering Judge Gurrola has not followed the rules of law as outline below, there is clear bias and intent to intimidate Wm. Todd Overcash, MD.

26.  A 500 page document filed with the Florida JQC for Judicial Rule Violations and said Judge has been subject to a RICO lawsuit, and has been asked for recusal from his case due to fear of unequal justice.

27.  The Judge has failed to enforce Florida Rules and is documented in court proceedings as telling Wm. Todd Overcash, MD that he has no reason to pay his property taxes, feed his dog or his horses, or remain on his disability and needs to return to full work status.  This is clear Judicial bias and failure to appreciate his disability and has further inflicted Post Traumatic Stress Syndrome upon Wm. Todd Overcash.

28.  28 U.S.C. Sec. 1622 and 1621: Subornation of perjury:  Mark Shelnutt has committed perjury and "disrespect of the disabled" in court.  He has stated that Wm. Todd Overcash should return to work despite disability, that he has spoken to an opposing witness and has been allowed to quote said witness without proof to Judge Gurrola and said evidence has been accepted.

29. Said witness was contacted after the hearing and he refuted Mr. Shelnutt's statements and provided irrefutable proof of the fraudulent statement by Mr. Shelnutt

30. Judge Gurrola refuses to hear said evidence and has led to further review of Judge Gurrola by the Florida JQC and Mr. Shelnutt by the Florida Bar. Mr. Shelnutt being aware of said letter by the witness has allowed his client to present false testimony.

31. In addition, Mr. Shelnutt is aware that his client has falsely filed DCF complaints upon Wm. Todd Overcash, MD and affidavits from parties confirm that these are false. However, Judge Gurrola, has ruled to not allow presentation of these facts.

32. Defendants' refusal to provide accommodations to Wm. Todd Overcash, and retaliation thereof, due to her disabilities violates Title II of the Americans With Disabilities Act, (ADA), 42 USC § 12131 et seq. ADA §§202 et seq.

## Amendment 14 - Citizenship Rights

33. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

34. **8 U.S.C. Sec. 241. Conspiracy against rights** If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right

or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured— They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.  It quite evident that there has been a conspiracy of individuals to inflict emotion distress, financial distress, denial of equal rights upon Wm. Todd Overcash, MD with the goal to achieve bankruptcy, homelessness, imprisonment at a minimum and possibly suicide should he be overwhelmed with the loss of all things dear Wm. Todd Overcash per his upbringing by his parents who were committed and married until death with his father being a Highly Decorated, 100% Disabled Marine Corp Officer and his mother a devoted wife and mother.

+++ *"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the contrary notwithstanding."* SUPREMACY CLAUSE -U.S. Constitution. Art. VI, Paragraph 2.
+++ *When a judge acts intentionally and knowingly to deprive a person of his constitutional rights he exercises no discretion or individual judgment; he acts no longer as a judge, but as a " minister" of his own prejudices.* [386 U.S. 547, 568].
+++ *A judge is liable for injury caused by a ministerial act; to have immunity the judge must be performing a judicial function. See, e. g., Ex parte Virginia, 100 U.S. 339 ; 2 Harper & James,* The Law of Torts 1642-1643 (1956).
+++ *The presence of malice and the intention to deprive a person of his civil rights is wholly incompatible with the judicial function.*
++++ *When the state in the instant case is one of the perpetrators and violators, there can be no expectation of just, indeed any, relief from it. The State cannot cause a federal violation, and then try to prohibit litigants from seeking redress in the federal courts for those same violations (i.e. the state*
**William Todd Overcash, M.D., Notice of Civil Rights Removal pursuant to 28 U.S.C. §1443**
**December 10th, 2013**

*cannot violate our fundamental rights, and then try to have us dismissed out of federal court for seeking vindication of those rights) ' "We have long recognized that a state cannot create a transitory cause of action and at the same time destroy the right to sue on that transitory cause of action in any court having jurisdiction"*, Tennessee Coal, Iron & R, Co. v. George, 233 U.S. 354, 360 (1914)' cited in Marshall v. Marshall (2006), US Supreme Court.

Judges' oath of office includes the undertaking to uphold the laws and Constitution of the United States. Any Judge violating such undertakings loses jurisdiction, resulting in his orders being *VOID*, and he himself commits a treasonable offence against the United States.

## Amendment 8 - Cruel and Unusual Punishment

35.  Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

36.  Judge Gurrola has stated in court that Wm. Todd Overcash, MD does not have the right to pay his attorney, pay his property taxes, and feed his animals until he first pays the opposing counsel.

37.  The opposing counsel files numerous frivolous lawsuits, (example:  to block braces for cross bite, non cosmetic issue) to continuously run his fees higher.

38.  The court has ordered Dr. Overcash to essentially pay all of his disability income to Mr. Shelnutt and has now placed Dr. Overcash into a position of having inability to save his retirement funds and faces filing Bankruptcy which is further insult to his pride and further inflicts PTSD upon him.

<u>Domestic Relations Courts.</u>

39.  **RACIAL DISCRIMINATION: DEFINING "RACE" BY A SET OF CULTURAL NORMS VALUES CHARACTERISTIC OF TRADITIONAL WHITE AMERICAN CHRISTIAN SOCIETY.**

**40.** Defendant specifically alleges that the Domestic Relations Courts of the Fifth Judicial Circuit in and for Marion County, Florida, pursuant to in accordance with Statewide customs, practices, and policies in the construction and application of the Florida Domestic Relations and Dependency Codes, have denied him and continue to threaten him with more severe denials of the equal protection of the laws regarding access to the courts, the right to make and enforce contracts, to present evidence, and to be subject to the same and no other penalties against him As guaranteed in terms of racial[1] equality by 42 U.S.C. §1981(a):

> *All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.*

**41.** The instant complaint and related notices and motions being removed reflect a series of sham prosecutions brought in bad faith for direct criminal contempt (See Exhibit A) which was neither framed properly nor prosecuted timely as a prosecution for direct criminal contempt.

**42.** Defendant Overcash alleges that in this proceeding he has consistently been and is now being denied, pursuant to Florida Domestic Relations and Dependency Codes and the Florida Criminal Code Direct Criminal Contempt statutes of general applicability, as construed and applied by the Florida Judiciary, the same rights "to

---

[1] Throughout this Notice, "race" is defined as a cultural construct of ethical norms and value based codes of behavior. Anthropologists and the terms of the United Nations Genocide Treaty agree that "race" and "ethnicity" are not so much a matter of skin color, hair texture, or facial features as of complex cluster cultural and behavioral attributes. Defendant Overcash alleges that he is a target for the Multi-Cultural and Wealth Redistributing customs, practices, and policies of the Florida Judiciary pursuant to the Family and Domestic Relations Codes because he is in these senses a racial "White Anglo-Saxon Protestant", and only coincidentally because he is also Caucasian Male of above average income.

make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

43.    Basically, the Domestic Relations Code provisions relating to contempt are being implemented as a vector for judicial theft, an effective "attainder" of all Defendant's rights to liberty and property, a judicial bill of pains and penalties not actually authorized by law, but seen as an acceptable way of seizing and redistributing Dr. William Todd Overcash's "wealth" to his former wife's attorney and others are acting in concert with him.

44.    Such as not-paying his ex-wife's attorneys' fees in matters unrelated to child support or alimony) which pains and penalties are only being imposed upon him as a result of cultural prejudice, standing in as a predicate for "race", against his perceived "WASP"ish wealth and community standing as a prominent White Male *28 U.S.C. §1443(1) and 42 U.S.C. §1981.*

45.    As a Defendant in the State Court, Dr. Overcash specifically proposes that, under these statutes as well as the First, Ninth, and Fourteenth Amendments, his "racial identity" as an upper-middle class "WASP" be defined and understood as consisting certain independent, traditional cultural lifeways and values, which are diametrically opposed to the "non-traditional" values and "multicultural" (essentially unstructured, dependent) lifestyle into which his ex-wife, and the Florida public schools and courts, wish and design to acculturate and socialize (i.e. rear and educate) his daughter.

## ARBITRARY & CAPRICIOUS PROSECUTION
## UNDER COLOR OF LAW

46.    Attorney Mark D. Shelnutt, openly acting in regular ex-parte communication with Judge Barbara Gurrrola as the counsel for Movant (Former Wife) Lori Foultz, has taken the lead role in implementing this policy against the Defendant. However, in addition or in the alternative, there appears to be an invisible mastermind or "puppet master"

47.    To wit, it appears possible, if not probable, that some unknown powerful person in authority in Florida or Marion County has taken control of all Domestic Relations and related proceedings in this case to direct operations, and to determine such issues as who shall be allowed to petition for redress of grievances without requiring any judicial decision.

48.    Defendant William Todd Overcash's has over the past six years been subjected to a relentless program of arbitrary and capricious harassment (including almost continuously repeated threats of imprisonment) implemented by and through the Domestic Relations Judges of Florida's 5th Judicial Circuit Court in and for Marion County. Attorney Mark D. Shelnutt, as a favored officer of the 5th Judicial Circuit Court in and for Marion County, coordinates and directs the operations and decisions of the several courts (and the Florida Department of Children & Families, aka "DCF") involved in this case either on behalf of himself and/or the court and his client Lori Foultz in this case. It also appears (see affidavit of Beth Gordon, Esq.) that some other "behind the scenes", unrevealed, hidden authority has exercised ultimate illegitimate, arbitrary & capricious, power such that the outcome of all issues is

predetermined against the Defendant William Todd Overcash, M.D, and any person who associates with him.

# A FIT PARENT'S SUBSTANTIVE DUE PROCESS RIGHTS
# TO EDUCATE CHILDREN

49.    The liberty interest at issue in this case (broadly defined as the post dissolution, post-final custody determination)—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests regularly and continually recognized by the United States Supreme Court under the general inventory of rights implicitly protected "substantive due process". More than 75 years ago, in *Meyer v. Nebraska*, 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), Justice McReynolds wrote and the Court held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, in *Pierce v. Society of Sisters*, 268 U.S. 510, 534–535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), Justice McReynolds again wrote and the Court affirmed that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." McReynolds' opinion in *Pierce* explained that "[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Id.,* at 535, 45 S.Ct. 571. Later the Supreme Court, per Justice Rutledge, returned to the subject in *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. "It is cardinal with us that the custody, care and nurture

of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Id.,* at 166, 64 S.Ct. 438.

50.    In subsequent cases also, decided during the early years of Chief Justice Warren Burger, the Supreme Court elaborated upon the fundamental right of parents to make decisions concerning the care, custody, and control of their children. See, *e.g., Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) ("It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements' " (citation omitted)); *Wisconsin v. Yoder,* 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children; this primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition.")

51.    In relation to the holding of *Stanley,* Defendant Dr. Overcash alleges that the Florida Domestic Relations Code as implemented in the Florida Domestic Relations Courts aim to deprive him of his interest as a parent in the care, custody, and management of his children solely to effect and engineer politically motivated shifts in economic arrangements. In relation to the holding of *Yoder*, Defendant

52.    Dr. Overcash alleges and will prove that the ultimate goal of the Florida Domestic Relations Code as construed and implemented by the Florida Domestic Relations Courts is to alter and amend the course of history and forever to change the culture of Western civilization precisely by destroying Western Civilization's

strong tradition of parental concern for the nurture and upbringing of their children. Dr. Overcash further submits that the goal of the Florida judiciary is thereby transfer to the state the (former) primary role of the parents in the upbringing of their children and thus to end parental primacy as an American tradition.

53. Further, in reference to Defendant Dr. Overcash's situation, among the important new pronouncements or innovations in these early Burger Court cases was the determinations in **Stanley** that "parental unfitness must be established on basis of individualized proof" and that: The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come(s) to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.' (citing a non-child custody question of First Amendment rights, in **Kovacs v. Cooper**, 336 U.S. 77, 95, 69 S.Ct. 448, 458, 93 L.Ed. 513 (1949) (Frankfurter, J., concurring). **Stanley v. Illinois**, 405 U.S. 649 at 651, 92 S.Ct. 1208 at 1212. Second in importance to the present case was the holding, in **Wisconsin v. Yoder** that "the power of the parent, even when linked to a free exercise claim, may be subject to limitation under Prince **[only]** if it appears that parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens." 406 U.S. 205 at 234, 92 S.Ct. 1526 at 1543.

54. Because he is an upper middle class white male and a target for "redistributive" reduction of his wealth, Dr. Overcash has been denied (1) the rights to be individually assessed as fit, (2) the rights to present and offer evidence or even to enforce court-approved contracts, and (3) the right to a fair trial and

assessment of relevance of factual allegations to legal conclusions and the judgments springing therefrom. All the charges have been leveled against him and all these deprivations of rights to liberty and property have happened despite the fact that he has never been formally or properly adjudicated or found by clear and convincing evidence to jeopardize or in any way threaten to jeopardize the health or safety of his daughter, his wife, her new husband, or anyone else.

55.    It also appears (see affidavit of Beth Gordon, Esq.) that some other "behind the scenes", unrevealed, hidden authority has exercised ultimate illegitimate, arbitrary & capricious, power such that the outcome of all issues is If the primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition, as Chief Justice Burger opined in *Yoder*, it is difficult to understand how Dr. William Todd Overcash could have been coerced into agreeing to termination of his parental rights in the absence of any fair or genuine findings of unfitness, neglect, or abuse.

56.    In the later years of the Burger and early Rehnquist Courts, the Justices affirmed and restated these pro-parent positions on many occasions. For example, we read in *Quilloin v. Walcott,* 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978): "We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected"). Or in, *Parham v. J. R.*, 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), the Court held that, "Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course". *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), simply affirmed "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child".

57.    As noted above, Dr. William Todd Overcash alleges and will prove at trial by a preponderance of the credible evidence that the Florida Domestic Relations Code as construed, applied, and implemented by the Florida Domestic Relations. Courts seek to destroy the jurisprudence upholding Western Civilization's concepts of the family as a unit with broad parental authority over minor children and thus is designed to and in fact subverts the fundamental liberty interest of parents in the care custody, and management of their children.

58.    No party has alleged, nor has any court ever found, that Defendant William Todd Overcash, M.D., is or ever was an unfit parent. That aspect of the case is supremely and particularly important, because (as Justice O'Connor most recently explained in *Troxel v. Granville*) there is a strong presumption that fit parents act in the best interests of their children:

> "[O]ur constitutional system long ago rejected any notion that a child
> is the mere creature of the State and, on the contrary, asserted that
> parents generally have the right, coupled with the high duty, to
> recognize and prepare [their children] for additional obligations. ...
> The law's concept of the family rests on a presumption that parents
> possess what a child lacks in maturity, experience, and capacity for
> judgment required for making life's difficult decisions. More
> important, historically it has recognized that natural bonds of affection
> lead parents to act in the best interests of their children." (citations
> omitted)(alteration in original) (internal quotation marks and
> citations omitted).

59.    Accordingly, so long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions

concerning the rearing of that parent's children. ***Troxel v. Granville***, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

60.    In short, in a long line of cases, the Supreme Court has held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the right to direct the education and upbringing of one's children (repeatedly citing *Meyer* and *Pierce* as the foundational cases on this point). In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of EACH parent to make decisions concerning the care, custody, and control of their children, but attorney Mark D. Shelnutt and Judge Barbara Gurrola have worked together for the past year to incarcerate William Todd Overcash to prevent him from doing any of these things, primarily because the Florida Domestic Relations Courts want to take down the primary caretaker every chance they get, but secondarily because Mark D. Shelnutt & Lori Foultz see in Overcash (without any unnecessary play on words), their ultimate "cash cow" and source of support for distinctly non-tradional, anti-WASP parasitic lifestyles.

## ABITRARY & CAPRICIOUS MISUSE OF FLORIDA CONTEMPT LAW
## TO DESTROY WHITE CHRISTIAN FATHERS' PARENTAL RIGHTS

61.    Defendant further alleges that Florida state law as applied, particular, but not limited to directly Florida Rules of Criminal Procedure, Rules 3.830-3.840, has been manifestly redesigned by the Judiciary to discriminate against Upper Class White Males. Florida Rule of Criminal Procedure 3.830-3.840 are also designed and implemented to act as an only flimsily disguised redistributive tax (a "taking of private

property for public use without due process of law"). The use of sham judicial procedures to enforce such a redistributive tax directly collides with Federal law in such a way as to create two groups with radically disparate and unequal rights under the law: namely domestic relations attorneys and upper class white males articulating and advocating traditional American values.

62.    To reiterate: the purpose of the Florida Domestic Relations Code as implemented in the Courts by the Florida Criminal Procedures of Direct or Indirect Criminal Contempt have assumed the dual purposes of (1) suppressing the teaching of such traditional American values in the context of each fit parent's fundamental right to the care, education, and nurturing of his or her child (as discussed above, especially *Troxel v. Granville*), and (2) ensuring that the laws of the State of Florida so construed pose such a drastic threat to the First, Fifth and Ninth Amendment liberty and property rights of Upper Class White Males (especially substantial professionals such as Medical Doctors) as a (currently) politically disfavored, discrete and insular minority as to require Federal Intervention analogous to and directly comparable with Federal Intervention in other economic class-based racial civil rights issues both in the 1860s-70s and the 1950s-70s.

## PARENTAL RIGHTS TO EDUCATE CHILDREN AND THE PRESERVATION OF RACIAL IDENTITY

63.    As the United States ratification of the "Genocide Treaty" recognizes, the transmission of culture to children in their parents' tradition is a fundamental right of racial and ethnic identity, and Western Civilization simply cannot survive without

affording traditional parents the right to participate equally in the education of their own children. Dr. William Todd Overcash, M.D., alleges that the effect of the Florida Domestic Relations Code by the Florida Domestic Relations Courts, to him and to others, is genocidal under the following definition found in 18 U.S.C. §1091(a), subparts (4) and (6):

> **(a) Basic offense.**--Whoever, whether in time of peace or in time of war and with the specific intent to destroy, in whole or in substantial part, a national, ethnic, racial, or religious group as such—
>
> **(1)** kills members of that group;
> **(2)** causes serious bodily injury to members of that group;
> **(3)** causes the permanent impairment of the mental faculties of members of the group through drugs, torture, or similar techniques;
> **(4)** subjects the group to conditions of life that are intended to cause the physical destruction of the group in whole or in part;
> **(5)** imposes measures intended to prevent births within the group; or
> **(6)** transfers by force children of the group to another group;

64.   Defendant specifically alleges that the post-dissolution and post-final custody determination practices of the Florida Domestic Relations Courts, in conformity with Florida Domestic Relations Code, (4) has the effect of subjecting WASPs such as himself to conditions of life (multiple repeated and successive arbitrary and capricious deprivation of property and income above and beyond alimony and child-support requirements, judicial demands of forced labor [in spite of permanent disability] to support ex-wife's dependent lifestyle choices) designed to cause the physical destruction of his group in whole or in part and (6) by threats of repeated arbitrary & capricious incarceration without just or probable cause has transferred his child (and the children of other similarly situated upper middle class WASP males) to

all other groups (non-traditional, multicultural, whites, non-whites and others opposed to the cultural values and norms of traditional WASPish America).

65.    Dr. William Todd Overcash, M.D., alleges and asks this Court to find and rule that a "multi-cultural" lifestyle in inimical to the maintenance of any one single cultural, ethnic, or racial identity and is therefore genocidal as against WASPs or any other traditional cultural, ethnic, or racial group[2].

## EXTENTION, MODIFICATION OR REVERSAL OF EXISTING LAW

66.    Defendant asks, within the meaning of Rule 11(b)(2) of the Federal Rules of Civil Procedure, that this United States District Court approve their good faith contentions, "warranted by [at least the more recent lines of U.S. Supreme Court precedent construing] existing law [and/] or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law," that Civil Rights Removal under 28 U.S.C. §1443(1) should be extended to "all situations

---

[2] Articles V and VI, Convention on the Prevention and Punishment of the Crime of **Genocide**, UN Document Series Symbol: ST/HR/, UN Issuing Body: Secretariat Centre for Human Rights, U.N., approved and proposed for signature and ratification or accession by General Assembly resolution 260 A (III) of Dec. 9, 1948, entry into force in the United States: Jan. 12, 1951 in accordance with article XIII (effective Nov. 4, 1998).
Article II of the **Genocide Treaty** provides that "[i]n the present Convention, **genocide** means any of the following acts committed with intent to destroy, in whole or in part, a national, ethnical, racial or religious group, such as: ... (b) Causing serious bodily or mental harm to members of the group; [and] (c) Deliberately inflicting on the group conditions of life calculated to bring about its physical destruction in whole or in part."
When a person with severe disabilities such as Defendant William Todd Overcash, M.D., is repeatedly threatened with deprivation of income, or commanded to work in spite of disability and to forego Private, State or Federal benefits necessary for survival and the "independent living" and "economic self-sufficiency" objective of the ADA (42 U.S.C. §12101(a)(8)), such State conduct transgresses the **Genocide Treaty**.
Article V of the **Genocide Treaty** addresses State Court Systems, requiring that "[t]he Contracting Parties undertake to enact, in accordance with their respective Constitutions, the necessary legislation to give effect to the provisions of the present Convention, and, in particular, to provide effective penalties for persons guilty of **genocide** or any of the other acts enumerated in article III." Thus, article V of the **Genocide Treaty** provides an additional basis for this Federal Court's exercise of jurisdiction over the Florida Domestic Relations Courts, whose policies, practices, procedures, standards, and criteria violate certain provisions of said **treaty**.

where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court." ***State of Georgia v. Rachel***, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966); ***Strauder v. State of West Virginia***, 100 U.S. 303, 25 L.Ed. 664 (1879).

## ARBITRARY & CAPRICIOUS USE OF FLORIDA CONTEMPT LAW TO SUPPRESS FIRST AMENDMENT RIGHTS TO FREEDOM OF SPEECH, TO PETITION, AND TO PEACEABLY ASSEMBLE

67.    As against Defendant William Todd Overcash, M.D., the primary purposes of the prosecution in this case are (1) to punish this defendant (and those associated with him, e.g. his sometimes gardener, household assistant, and anti-Shelnutt poster "standard bearer" Marla McNeil) for the exercise of his First Amendment Rights of freedom of speech, freedom of assembly (association), and the right peacefully to petition for redress of grievances and (2) to punish the Defendant (and those associated with him, e.g. Marla McNeil) for the Exercise of said rights in an underhanded, occult, or hermeneutic manner in violation of the 5th, 7th, and 9th Amendments to the 1787 Constitution of the United States of America, as well as parallel provisions of the Florida Constitution.

68.    In the alternative, Defendant William Todd Overcash, M.D., requests that the provisions of civil rights removal under and pursuant to 42 U.S.C. §1443(1) be extended to cover and include situations where a comprehensive state statutory scheme has been so construed and applied to a discrete and insular, politically disfavored, minority such as Upper Class White Males targeted by the Domestic Relations Courts, especially but not limited to those involved with Upper Middle

Class dissolution of marriage proceedings, for the purposes of wealth confiscation and redistribution.

## UNCONSTITUTIONAL STATE STATUTORY SCHEME FOR CONTEMPT AS CAUSE FOR CIVIL RIGHTS REMOVAL:

69.     Florida has, by and through the application of §3.840 of the Florida Code of Criminal Procedure "direct contempt", denied William Todd Overcash due process and equal protection of the laws:

(1) by allowing contempt for attorneys' fees without standing to claim domestic relations benefit to children or spousal support (alimony), the Florida courts have indeed irrationally and without any significant or compelling governmental purpose granted "title of nobility" (specially privileged and immune) status to divorce lawyers to have some special standing in the courts—including but not limited to the right to be paid, upon penalty of incarceration in a county jail or state penitentiary, which no other lawyer, professional person, or creditor enjoys.

(2) by allowing "equitable" judgments for awards to property without fair notice and reasonable opportunity to defend.

70.    Florida state law, as construed NOT by the Florida Supreme Court but by and in the Florida Fourth District Court of Appeal's decision in *Wertkin v. Wertkin*, 763 So.2d 465 (Florida 4th DCA 2000), allows implementation and "operation of a pervasive and explicit state law" that does not require proof of "injury in fact" or "standing" to bring suit, at least in the context of an "equitable action" or motion for attorneys' fees and transfers of income and property disconnected from any claim of relevance to alimony or child support.

71.    Article III standing is an issue, which arises often on the "cutting edge" of new forms of litigation, such as citizen environmental lawsuits. In such suits, the Supreme Court has defined "the irreducible minimum of standing" to mean that:

> First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, ... and (b) actual or imminent, not conjectural or hypothetical.... Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

72.    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Defendants contend that, under the Fourteenth Amendment, due process of law requires that any suit (including even a "Motion for Direct Contempt" filed four months after the fact) seeking to deprive any person of life, liberty, or property must be brought by an injured party with what has come to be referred to as "Article III Standing" in the Federal Courts. The Third Circuit has recently addressed possible differences between state vs. federal standing in *Good v. City of Philadelphia*, 539 F.3d 311, see esp. 318-322, (USCA 3rd Cir., 2008) without addressing whether the Fourteenth Amendment imposes a jurisdictional floor.

73.    Defendants submit that the Florida 4th D.C.A. in *Wertkin v. Wertkin* has done nothing short of authorizing judicial theft of money and property and coercion to surrender other intangible rights (such as the Defendant's parental rights) by allowing domestic relations attorneys authority to petition for the seizure of money, property, and other tangible and intangible rights, including parental rights to nurture

and education of children, without requiring proof or even evidence of true-domestic-relations-relevance or standing (i.e. relationship to child support or alimony)[3]

74.    The present case, in which Lori Foultz by and through Mark D. Shelnutt presents her motion and seeks to enforce contempt based on a retracted statement regarding payment of property taxes in a case-context wherein Shelnutt is constantly seeking to extract money for Foultz' attorneys' fees shows the kind of arbitrary and capricious criminal prosecutions that are allowed in a domestic relations court system which disregards all constitutional limitations normally imposed by and through the concept of "due process of law." There are now, in Florida, two classes of citizens—divorce attorneys ("judicially authorized thieves") and their white upper-middle class male victims, and only the judicially authorized thieves are protected by law.

75.    Defendant further contends that in such suits as to deprive individuals of life, liberty, and property, the strictest standards of actual notice must be applied, and that only indirect or inferential notice is insufficient. The Florida Domestic Relations Courts' customary practice in attorneys' fee collection litigation appears to be to allow defaults to be taken without personal service of process, or with fraudulently asserted service of process, contrary to all traditional standards of due process.

76.    Several filings in November 2013, by Mark D. Shelnutt (attached herein as

---

[3] Standing is the substantive due process notion of what a party must do in order to "open the doors of the courthouse", i.e. to have the legal right to bring a legal action through our judicial system.  There is nothing more fundamental to distinguishing between "sound" and "frivolous" lawsuits, unless we are to abolish that concept all together. Without the protective concept of standing, anyone could sue anyone at any time, and this would either ultimately cause legal anarchy or, perhaps to Shelnutt's advantage, an extremely rapid enrichment of the bar.

Exhibits C-D) were the final notice that Overcash's First Amendment rights were not only being denied, but on December 4, 2013, Overcash received a "Notice" that Shelnutt was seeking an addition $43,116.35 and the obvious presumption that his property could by mere "notice" be so readily seized was hence in and of are itself a proper final trigger for the filing of this Notice of Civil Rights Removal pursuant to 28 U.S.C. §1446(b):

> **(b) Requirements; generally---(1)** The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

### ALTERNATIVE CONTENTION that the JUDICIAL CONSTRUCTION and APPLICATION of 28 U.S.C. §1443 BE MODIFIED

77.    As allowed by Rule 11(b)(2) of the Federal Rules of Civil Procedure, Defendant William Todd Overcash, M.D., contends that civil rights removal must be reinterpreted. As argued above, Defendant William Todd Overcash, M.D., submits that his social standing and cultural values are under attack because he is an upper middle class white male protestant (WASP) whose values are incompatible with the multi-cultural "Brave New World[4]" favored by the Florida Domestic Relations Code, Courts and educational system, and that all of the proceedings in this case may be

---

[4] By "Brave New World" the Defendant means a world in which the State has entirely or almost entirely supplanted the family as not only the basic force and structure of upbringing and education, but also of procreation and reproduction itself. Aldous Huxley's famous 1931 book "Brave New World" with eerie accuracy predicted a future (which is in large part already our present) of a society and culture shaped and dominated by abortion, birth control, child sexualization, complete suppression of individual autonomy and parental succession and family, and the removal of all who express individual ambition, commitment, ideas, or passion t reeducational centers.

*William Todd Overcash, M.D., Notice of Civil Rights Removal pursuant to 28 U.S.C. §1443*
*December 10th, 2013*

seen as not merely culturally, ethnically, racially, and socially discriminatory, but in fact, genocidal.

78.     However, an alternative challenge to the standard construction of 28 U.S.C. §1443 in its current judicially crafted interpretation (of an otherwise race-neutral statute) amounts to nothing more than a race-based affirmative action program abolished (because there is no compelling governmental interest involved in the establishment of such a narrow program). Civil Rights Removal always should have been applied to give effect to each word in the statute as written, not some broad "labor saving" clause to keep cases out of the Federal System, but to implement constitutional checks and balances. Accordingly, Civil Rights Removal is entitled to a new birth of freedom, and must be reinterpreted and so construed and consistently applied as to allow Federal Court review of any systematic, state law approved and implemented, mass deprivation of fundamental constitutional rights.

79.     As enacted by Congress and codified into "positive law," the Civil Rights Removal Statute, 28 U.S.C. §1443 states, in full:

28 U.S.C.A. § 1443

§ 1443. Civil rights cases

Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

---

Ancient cultural traditions such as Anglo-Saxon Protestantism, Christianity and general, the literature of the English language, or any traditional literature composed by "Dead White Males" is absolutely suppressed and abandoned in Huxley's "Brave New World", along with the concepts of Constitutional Government, Equality, and Due Process of Law, and these ancient cultural traditions are likewise under constant attack in the Florida Domestic Relations Courts acting under and implementing the Florida Domestic Relations Code.

**(1)** Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

**(2)** For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 938.)

80.    This statute, on its face, makes no reference to race, color, creed, national origin, sex, or any other categorical limitation. Congress enacted 28 U.S.C. §1443(1) to protect "any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof" while 28 U.S.C. §1443(2) apparently, facially, permits invocation of the protection of Federal Courts when a defendant is prosecuted or sued, "For any act under color of authority derived from any law providing for equal rights." The Civil Rights removal statute thus appears to have been designed, enacted and formulated as part of the system of "checks and balances" between state and federal power to ensure the protection of all fundamental rights enumerated and protected by implication under the Constitution of the United States.

81.    Civil Rights Removal is almost unique in the Judicial Code of the United States. Unlike almost every other provision permitting removal, an order granting a Motion to Remand to State Court is appealable, *as of right*; 28 U.S.C. §1447(d).

82.     Likewise, the Third Circuit has affirmed that the civil rights removal statute constitutes a narrow exception to the rule that state court action may be removed to federal district court only if federal jurisdiction is evident on face of plaintiff's well-pleaded complaint. ***Davis v. Glanton***, 107 F.3d 1044 (3rd Cir., 03-03-1997).

83.     While the Eleventh Circuit has not directly addressed this question, an opinion from the Northern District of Georgia, ***Rogers v. Rucker***, held some 21 years ago (with dicta very relevant to the present action) that the second prong of statutory exception to well-pleaded complaint rule for certain civil rights actions, which requires a showing that party seeking removal is denied or cannot enforce specific federal right in state court, normally entails showing that denial be manifest in formal expression of state law; **however, narrow exception exists when lawsuit filed in state court is itself the act by which removing party's civil rights are violated**. ***Rogers v. Rucker***, 835 F.Supp. 1410, (N.D.Ga. 1993). It can, of course, be argued that Defendant William Todd Overcash can show both specific violations in the lawsuit against him and (as alleged above) in the Florida Statutes.

84.     A comparison of §1443 to the other sections permitting removal in the Judicial Code of the United States demonstrates the breadth of its scope, as enacted by Congress. Thus, unlike §1441(a), which embraces only *civil* actions, removal under §1443 includes both *civil* and *criminal* actions. Unlike §1442a, which stipulates that the Notice of Removal must be filed "before the trial or final hearing" in the case, §1443, by its demonstrable text, places no limitation on the stage of the proceeding at which point the right of removal must be exercised, or it is waived.

85.     In short, as the Sixth Circuit Court of Appeals observed in ***Conrad v. Robinson***, 871 F.2d 612, 614 (6th Cir. 1989), the Civil Rights Removal Statute "*is specifically designed to extricate protected persons from state civil and*

*criminal prosecution and provide instead a federal forum."* Very clearly, Congress intended that *"where a state proceeding...is initiated in order to harass or intimidate a defendant for exercising his civil rights...*" such a person should be able to claim the safe harbor of a Federal Court. Harold S. Lewis, Jr. & Elizabeth J. Norman, *Civil Rights Law and Practice* (2nd ed. 2001), §5.50: p 467.

86.   In spite of this very broad language, and reasonable constitutional purpose (as an incident of the maintenance of the Supremacy of the United States Constitution of 1787, especially as amended in 1791 by the Bill of Rights) the United States Courts have unfairly and unreasonably (and Defendant William Todd Overcash, M.D., would contend unconstitutionally) restricted the scope of 28 U.S.C. §1443 to protect ONLY race-based discrimination enacted as a matter of state law, including expressly race-based customs, practices, and policies having the force or effect of law.

87.   In so doing, the Federal Courts have, whether intentionally or unintentionally, and Defendants here contend unconstitutionally, transformed the Civil Rights Removal Statute from its apparent and originally intended purpose as a sword against into a shield to protect many official state laws and policies which systemtically violate or infringe upon *Carolene Products* "Footnote 4" enumerated rights (see, e.g. *United States v. Carolene Products, Inc.*, 304 U.S. 144, 153, n. 4[5], 58 S.Ct. 778, 82 L.Ed. 1234 (1938).

88.     The initial premise in the judicial construction of Civil Rights Removal appears reasonable enough: Removal will be appropriate in the present case, pursuant to 28 U.S.C. §§1443(a) & 1447(d) only if Defendant can in good faith allege, as he does herein below, that the procedural and substantive safeguards

---

[5] "Footnote 4" has become shorthand in American Constitutional laws for fundamental rights jurisprudence and "strict scrutiny" in the protection of the same.

of Florida law relating to Direct Contempt (at least as applied in the Domestic

Relations Courts in the Fifth Judicial Circuit in and for Marion County), have such

slight and nugatory effect, either on their face or as applied, that the relevant

Florida Contempt laws as applied in the Domestic Relations Courts constitutes on of

those:

> . . . . rare situations where it can be clearly predicted by reason of operation of
> pervasive and explicit state or federal law that these rights will inevitably be
> denied by very act of bringing defendant to trial in state court. 28 U.S.C.A. §
> 1443(1).

*Greenwood v. Peacock*, 384 U.S. 808, 828, 83 S.Ct. 1800, 1812, 16 L.Ed.2d 944

(1966).

89.    However, the Judicial Construction of the Civil Rights Removal Statute rapidly

transforms this broad check and balance on state power into a little or nothing more

than a judicially crafted affirmative action (aka "benignly or affirmatively

discriminatory, cf. *Regents of the University of California v.*

*Bakke, City of Richmond v. J.A. Croson,* and their progeny[6]) program for

promoting minority rights at the expense of the majority:

---

[6] The principles articulated by the United States Supreme Court repeatedly over the past
twenty years that all government racial classifications (including Federal classifications) must be
analyzed by a reviewing court under strict scrutiny in the modern line of equal protection cases
going back to the 1989 decision in *City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 109
S.Ct. 706, 102 L.Ed.2d 854, (U.S.Va., Jan 23, 1989).

Ten years after *Bakke* came *Croson,* but following *Croson* the Court handed down in less than another decade a strongly
consistent series of cases and opinions expanding on Justice
O'Connor's ruling that all race-based schemes should be examined under the "strict scrutiny" standard, namely: *Adarand
Constructors, Inc. v. Peña,* 515 U.S. 200, 227, 115 S.Ct.
2097, 132 L.Ed.2d 158 (1995), *Johnson v. California,* 336 F.3d 1117 (9th Cir., Jul 28, 2003),
*Grutter v. Bollinger,* 539 U.S. 306, 123 S.Ct. 2325, 156 L.Ed.2d 304, (U.S., Jun 23, 2003),
*Johnson v. California,* 543 U.S. 499, 125 S.Ct. 1141, 160 L.Ed.2d 949, (U.S., Feb 23, 2005). *State of Georgia v. Rachel,* 384 U.S.
780, 792, 86 S.Ct. 1783, 1790 (1966).

. . . . the phrase 'any law providing for equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality. Thus, the defendants' broad contentions under the First Amendment and the Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under §1443, because the guarantees of those clauses are phrased in terms of general application available to all persons or citizens, rather than in the specific language of racial equality that §1443 demands. As the Court of Appeals for the Second Circuit has concluded, §1443 'applies only to rights that are granted in terms of equality and not to the whole gamut of constitutional rights.' 'When the removal statute speaks of 'any law providing for equal rights,' it refers to those laws that are couched in terms of equality, such as the historic and the recent equal rights statutes, as distinguished from laws, of which the due process clause and 42 U.S.C. §1983 are sufficient examples, that confer equal rights in the sense, vital to our way of life, of bestowing them upon all.'

*State of Georgia v. Rachel*, 384 U.S. 780, 792, 86 S.Ct. 1783, 1790 (1966).

## PRAYER FOR RELIEF

WHEREFORE, Defendant William Todd Overcash prays that this Court will take note of his Notice of Removal, that all proceedings and actions (including the contempt proceedings) are and ought to remain enjoined during the pendency of this removal, and that Defendant be allowed to plead his counterclaims and, if necessary, consolidate this removed lawsuit with a separate Complaint for Civil Rights Violations against Mark D. Shelnutt and other parties, perhaps seeking declaratory relief (as permitted by 42 U.S.C. §§1983 & 1988 as amended in 1996) against certain Marion County Judges.

In addition, Dr. William Overcash requests that the Florida Department of Health and License be brought before Federal Court for review under ADAA Federal Statues and Statement on the record that the obligation was to pay wife's attorney prior to any Florida State Fines.

Award Damages as deemed necessary and any litigation expenses and costs of suit which may occur, pursuant to 42 U.S.C. § 12205; Cal.Civ. Code. §§ 52 and 54.3 and Cal. Civ. Proc. § 102.5.

Respectfully submitted.


William Todd Overcash, M.D

PROOF OF SERVICE:
I declare and certify that a true and correct copy of the above-and-foregoing Defendants Joint Notice of Removal were sent to: Mark Shelnutt Attorney for Movant Lori Overcash 1404 East Silver Springs Blvd. & Senior Judge Barbara Gurrola, at Marion County Judicial Center on December 10th, 2013.

By:_____
William Todd Overcash, M.D
Pro Se
14311 SE 128th Street
Ocklawaha, FL 32179

352 - 812 - 8819