FILED

## UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

|  |  |
|---|---|
| | § |
| Lori A. Foultz, | § CIVIL ACTION NUMBER: |
| Plaintiff, | § **5:13-cv-00606-ACC-PRL** |
| | § |
| | § Defendant William Todd Overcash, M.D. |
| | § **FIRST AMENDED NOTICE** |
| v. | § **CIVIL RIGHTS REMOVAL** pursuant |
| | § to 28 U.S.C. §1443 and Rule 11(b)(2) |
| | § of the Federal Rules of Civil Procedure |
| William Todd Overcash, M.D., | § from the |
| Defendant, | § FLORIDA 5TH JUDICIAL CIRCUIT |
| | § in and for MARION COUNTY (Ocala) |
| In the Interest of N.E.O., a minor | § **DOCKET NOS.:** 2002-4655-DR-FJ, |
| In the Matter of the Adoption of | § 2013-DP-0019, & 2013-DR-4392-FK |
| N.E.O. a minor child (related cases) | § |

## TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

1.     Comes now the Defendant William Todd Overcash, M.D., *pro se* or *in propria persona*, an upper middle class white male Christian American citizen, with this his First Amended Notice of Removal pursuant to 28 U.S.C. §1443(1) and Rule 11(b)(2) of the Federal Rules of Civil Procedure.

### First Amended Notice of Removal

2.     This Notice was originally (erroneously) filed as part of Defendant's Complaint under the A.D.A. filed December 10, 2013, but the Notice itself was buried inside the complaint, was not recognized as such and so did not operate to stay state court proceedings.   Under Rule 15(a)(1)(A), "a party may amend its pleading once as a matter of course within 21 days after serving it."   Defendant William Todd Cash, M.D., listed himself as the Plaintiff on the first page of his

*William Todd Overcash, M.D., First Amended Notice of Civil Rights Removal*
*pursuant to 28 U.S.C. §§1443, 1447(d) and 42 U.S.C. §§12131-12132*
*December 30, 2013*

1

December 10, 2013, filing, but has corrected this error within 21 days of filing. He reserves the right to correct his complaint prior to effecting service as well, in that his original filing as a "pro se litigant's erroneously" hybrid pleading

3.    Defendant here complains first and in particular of policies having the force and effect of law in the State of Florida to construe Florida statutes in such a manner as to suppress, oppress and obliterate (i.e. commit genocide against) the traditional cultural values of white Christian America, by and through the anti-male and anti-traditional nuclear family application of Florida Domestic Relations & Dependency Codes in the Florida Domestic Relations Courts.

**Overt Discrimination Against a Disabled Person (Not Accommodation)**

4.    Defendant William Todd Overcash, M.D., is a disabled individual, who was and remains entitled to special accommodations and consideration, but who instead has been subjected to special abuse and discrimination as defined in 42 U.S.C. §§12131-12132 relating to services provided by or available through state government or agencies thereof, among which categories the Florida Circuit Courts in their adjudicative function clearly fall.  See also *Tennessee v. Lane*, 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) and *Brewer v. Wisconsin Board of Bar Examiners*, 270 Fed.Appx. 418, 20 A.D. Cases 725, 36 NDLR P 201 (7th Circuit 2008).  In those cases, the Supreme Court found that Congress has identified a history and pattern of unconstitutional discrimination against the disabled with respect to their fundamental right of access to the courts, 541 U.S. at 522-29, 124 S.Ct. 1978.

5.    In this present Notice of Removal, Defendant William Todd Overcash asks this U.S. District Court to find that the addition of Americans with Disabilities Claims for discrimination by express targeting of a disabled litigant is either

warranted by existing law [and/] or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law. (See Rule 11(b), Federal Rules of Civil Procedure).

6.     Far from offering or providing Defendant any accommodation for his disability, State Circuit Judge Barbara Gurrola openly ridiculed the Defendant in a public hearing court, instructing him to have his disability "removed" or canceled out somehow and to return to work as a full-time surgeon despite the fact that he has been certified as physically unable by reason of degenerative joint disease in his hands to perform the manual duties of his particular surgical specialty, namely bariatric or laparoscopic surgery.   In essence, Judge Gurrola has ordered this Defendant to engage in Medical Malpractice and become a danger to his patients whom he is sworn to heal. Defendant William Todd Overcash, M.D., submits that the oppression of White Males of upper middle class status with professional training is an express preference or implicit policy of the Florida Domestic Relations and Dependency Courts.

7.     The often expressly articulated goal and purpose of this oppression in the Florida Domestic Relations and Dependency Courts is "Robin Hood-type Socialism": to take the property of upper class white males for purposes of economic redistribution to less educated, non-professional women and their children, without even the basic elements of actual notice and meaningful opportunity afforded by the most skeletal definition of due process of law. Defendant submits that the Florida Legislature perceives and has authorized the destruction, during divorce, of the productive professional classes of society, considering such destruction to be a "public use" of private property taken without either due process or just compensation, so long as this property is given to

petitioning women and their attorneys, regardless of need or any showing of lawful entitlement, despite the apparently merely private transfer of wealth from one individual to another.

## RACIAL DISCRIMINATION: DEFINING "RACE" BY A SET OF CULTURAL NORMS VALUES CHARACTERISTIC OF TRADITIONAL WHITE AMERICAN CHRISTIAN SOCIETY

8.     Defendant specifically alleges that the Domestic Relations Courts of the Fifth Judicial Circuit in and for Marion County, Florida, pursuant to in accordance with statewide customs, practices, and policies in the construction and application of the Florida Domestic Relations and Dependency Codes, have denied him and continue to threaten him with more severe denials of the equal protection of the laws regarding access to the courts, the right to make and enforce contracts, to present evidence, and to be subject to the same and no other penalties against him as guaranteed in terms of racial[1] equality by 42 U.S.C. §1981(a):

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

9.     The instant complaint and related notices and motions being removed reflect a series of sham prosecutions brought in bad faith for direct criminal contempt (See Exhibit A) which was neither framed properly nor prosecuted timely as a prosecution for direct criminal contempt. Defendant alleges and will show by competent evidence that such pleadings have not been filed and would not be filed

---

[1]   Throughout this Notice, "race" is defined as a cultural construct of ethical norms and value-

*William Todd Overcash, M.D., First Amended Notice of Civil Rights Removal*     4
*pursuant to 28 U.S.C. §§1443, 1447(d) and 42 U.S.C. §§12131-12132*
*December 30, 2013*

against Black or Hispanic citizens or residents of Florida.   There is obviously a correlation between economic differences due to race, education, and class, but the efforts of the State of Florida to "level the economic classes" has the express form and intended effect of racial discrimination against upper middle class white males in favor of forced illegal and unconstitutional (socialistic) redistribution of property).

10.   Defendant Overcash alleges that in this proceeding he has consistently been and is now being denied, pursuant to Florida Domestic Relations and Dependency Codes and the Florida Criminal Code Direct Criminal Contempt statutes of general applicability, as construed and applied by the Florida Judiciary, the same rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

11.   Basically, the Domestic Relations Code provisions relating to contempt are being implemented as a vector for judicial theft, an effective "attainder" of all Defendant's rights to liberty and property, a judicial bill of pains and penalties not actually authorized by law, but seen as an acceptable way of seizing and redistributing Dr. William Todd Overcash's "wealth" to his former wife's attorney and others acting in concert with him.

12.   Specifically, because Defendant is an Upper Middle Class White American Protestant-Christian male (a "WASP" medical doctor being perceived or classified by the system as a "Deep Pocket" target), Dr. William Todd Overcash is subject to the pains and penalties of "incarceration for direct contempt" for acts or offenses (such as not-paying his ex-wife's attorneys' fees in matters unrelated to child support or alimony) which pains and penalties are only being imposed upon him as

a result of cultural prejudice, standing in as a predicate for "race", against his perceived "WASP"ish wealth and community standing as a prominent White Male Doctor (targeted as surely, even if as irrationally and inaccurately, as that other class of "WMD"s for whose alleged existence the United States went to war against Iraq, Libya, and almost and perhaps (sometime in the future) Syria.

13.    The overall effect of such discriminatory prosecution against this Defendant is to destroy his ability to transmit his traditional culture and values to a future generation by participating reasonably in the education and general child-rearing of his own daughter.  The values being taught as favored and socially endorsed are "non-traditional", "non-WASP" values of dependency and forced wealth transfers based on status rather than work or worthy earnings or merit.

14.    The contempt prosecution shown as instituted in Exhibit A is a prosecution utterly without any good faith basis and no realistic chance of prosecutorial success, except for the complete subversion of the rule of law in the Domestic Relations Courts of Florida, generally, and the Fifth Judicial Circuit in and for Marion County, Florida, in particular.

15.    Defendant alleges that the Florida Domestic Relations Courts have, on a statewide basis, systematically so construed and applied the Florida Domestic Relations Code as to abolish the traditional white middle class and in particular as to suppress and erase its culture and value system, especially targeting relatively prominent, comparatively "powerful," ethically upright, upper middle class white Christians (especially traditional adherents of what 19th Century Sociologist Max Weber called "*The Protestant Ethic and the Spirit of Capitalism*"), who uphold and seek to inculcate their children with traditional white American middle-class values such as self-reliance, independent hard work, "always doing

one's best", and doing one's job and duty, starting as a student of traditional academics or leisure activities (such as equestrian sports and horsemanship).

16. Defendant submits that the target path of the Florida Domestic Relations Code and Courts is to not only to suppress the First Amendment, Fifth, Ninth and Fourteenth rights of **white Christian males** to freedom of speech and freedom of expression, but especially to destroy the nuclear family as the primary unit in charge of and governing and relating to the education and upraising of their minor children. The socio-economic and political goal of these laws it to ensure that, contrary to traditional W.A.S.P. values, that Florida children will become habituated to welfare provided by the resources of others and general dependence upon the government to protect their dependent, non-traditional lifestyles.

17. Modern anthropologists largely concur that "race" and "ethnicity" are largely behavioral and cultural constructs which classify certain physical traits and have certain biological associations, rather than being defining "race" as an absolute biological reality with direct and inevitable cultural or behavioral consequences. Defendant William Todd Overcash, M.D., submits that this modern definition of "race" should be applied and utilized to the definition of "race" in the Civil Rights Laws of the United States, including but not limited to 28 U.S.C. §1443(1) and 42 U.S.C. §1981.

18. Defendant Dr. Overcash specifically proposes that, under these statutes as well as the First, Ninth, and Fourteenth Amendments, his "racial identity" as an upper-middle class "WASP" be defined and understood as consisting certain independent, traditional cultural lifeways and values, which are diametrically opposed to the "non-traditional" values and "multicultural" (essentially unstructured, dependent) lifestyle into which his ex-wife, and the Florida public

schools and courts, wish and design to acculturate and socialize (i.e. rear and educate) his daughter.

## ARBITRARY & CAPRICIOUS PROSECUTION
## UNDER COLOR OF LAW

19.   Attorney Mark D. Shelnutt, openly acting in regular ex-parte communication with Judge Barbara Gurrrola as the counsel for Movant (Former Wife) Lori Foultz, has taken the lead role in implementing this policy against the Defendant.  However, in addition or in the alternative, there appears to be an invisible mastermind or "puppet master" as Defendant William Todd Overcash's former attorney Beth Gordon, Esq., admitted in private before non-party witnesses but refused to state under oath publicly or as a matter of record.

20.   To wit, it appears possible, if not probable, that some unknown powerful person in authority in Florida or Marion County has taken control of all Domestic Relations and related proceedings in this case to direct operations, and to determine such issues as who shall be allowed to petition for redress of grievances without requiring any judicial decision.

21.   Defendant William Todd Overcash's has over the past six years been subjected to a relentless program of arbitrary and capricious harassment (including almost continuously repeated threats of imprisonment) implemented by and through the Domestic Relations Judges of Florida's 5th Judicial Circuit Court in and for Marion County.  Attorney Mark D. Shelnutt, as a favored officer of the 5th Judicial Circuit Court in and for Marion County, coordinates and directs the operations and decisions of the several courts (and the Florida Department of Children & Families, aka "DCF") involved in this case either on behalf of himself and/or the court and his client Lori Foultz in this case.

22.   It also appears (according to the same private statements made as admissions by Attorney Beth Gordon who refused to testify to these matters in Court or affirm them for purposes of these pleadings) that some other "behind the scenes", unrevealed, hidden authority has exercised ultimate illegitimate, arbitrary & capricious, power such that the outcome of all issues is predetermined against the Defendant William Todd Overcash, M.D, and any person who associates with him.

## A FIT PARENT'S SUBSTANTIVE DUE PROCESS RIGHTS TO EDUCATE CHILDREN (a *Carolene Products*, Footnote 4, right)

23.   The liberty interest at issue in this case (broadly defined as the post-dissolution, post-final custody determination)—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests regularly and continually recognized by the United States Supreme Court under the general inventory of rights implicitly protected "substantive due process".   More than 75 years ago, in *Meyer v. Nebraska*, 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), Justice McReynolds wrote and the Court held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own."

24.   The Florida Circuit Courts of Domestic Relations Jurisdiction have denied Defendant William Todd Overcash the right to maintain his home and play any role in the upbringing of his children and to control any part of the education of his only child, the daughter, given a set of facts and under suchlike circumstance where and when these same courts would never have denied such rights to a similarly situated male of black or Hispanic or Asiatic racial identity or origins.

25.   Two years after **Meyer v. Nebraska**, in **Pierce v. Society of Sisters**, 268 U.S. 510, 534–535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), Justice McReynolds again wrote and the Court affirmed that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." McReynolds' opinion in **Pierce** explained that "[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Id.*, at 535, 45 S.Ct. 571. Later the Supreme Court, per Justice Rutledge, returned to the subject in **Prince v. Massachusetts**, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Id.*, at 166, 64 S.Ct. 438.

26.   Defendant William Todd Overcash, M.D., has been denied the right to any part of the custody, care, and nurture of his child absent any finding of unfitness, given specific facts and under circumstances where the Florida Circuit Courts of Domestic Relations Jurisdiction would not have denied such rights to any male of black, Hispanic, or Asiatic racial origins.

27.   In subsequent cases also, decided during the early years of Chief Justice Warren Burger, the Supreme Court elaborated upon the fundamental right of parents to make decisions concerning the care, custody, and control of their children. See, *e.g.*, **Stanley v. Illinois**, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) ("It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a

momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements' " (citation omitted)); ***Wisconsin v. Yoder,*** 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children; this primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition.")

28.    In relation to the holding of ***Stanley,*** Defendant Dr. Overcash alleges that the Florida Domestic Relations Code as implemented in the Florida Domestic Relations Courts aim to deprive him of his interest as a parent in the care, custody, and management of his children solely to effect and engineer politically motivated shifts in economic arrangements.

29.    In relation to the holding of ***Yoder,*** Defendant Dr. Overcash alleges and will prove that the ultimate goal of the Florida Domestic Relations Code as construed and implemented by the Florida Domestic Relations Courts is to alter and amend the course of history and forever to change the culture of Western civilization precisely by destroying Western Civilization's strong tradition of parental concern for the nurture and upbringing of their children.

30.    Dr. Overcash further submits that the goal of the Florida judiciary is thereby transfer to the state the (former) primary role of the parents in the upbringing of their children and thus to end parental primacy as an American tradition.

31.    Further, in reference to Defendant Dr. Overcash's situation, among the important new pronouncements or innovations in these early Burger Court cases was the determinations in ***Stanley*** that "parental unfitness must be established on basis of individualized proof" and that:

The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come(s) to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.' (citing a non-child custody question of First Amendment rights, in ***Kovacs v. Cooper***, 336 U.S. 77, 95, 69 S.Ct. 448, 458, 93 L.Ed. 513 (1949) (Frankfurter, J., concurring).

***Stanley v. Illinois***, 405 U.S. 649 at 651, 92 S.Ct. 1208 at 1212.

32.    Second in importance to the present case was the holding, in ***Wisconsin v. Yoder*** that "the power of the parent, even when linked to a free exercise claim, may be subject to limitation under Prince **[only]** if it appears that parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens." 406 U.S. 205 at 234, 92 S.Ct. 1526 at 1543.

33.    Because he is an upper middle class white male and a target for "redistributive" reduction of his wealth, Dr. Overcash has been denied (1) the rights to be individually assessed as fit, (2) the rights to present and offer evidence or even to enforce court-approved contracts, and (3) the right to a fair trial and assessment of relevance of factual allegations to legal conclusions and the judgments springing therefrom.

34.    All the charges have been leveled against this Defendant William Todd Overcash, M.D., and all these deprivations of rights to liberty and property have happened despite the fact that he has never been formally or properly adjudicated or found by clear and convincing evidence either to be "unfit" or to jeopardize or in any way threaten to jeopardize the health or safety of his daughter, his wife, her new husband, or anyone else.

35.   Instead, the Florida Domestic Relations Code has been applied, as it is across the state, in a discriminatory anti-white manner to oppress, suppress, and obliterate the status of any substantial, upper middle class, father as a parent or educator, without relevance to actual aspects of his relationship with his daughter or presentation of evidence fairly by competent fact or expert (opinion) witnesses.

36.   If the primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition, as Chief Justice Burger opined in *Yoder*, it is difficult to understand how Dr. William Todd Overcash could have been coerced into agreeing to termination of his parental rights in the absence of any fair or genuine findings of unfitness, neglect, or abuse.

37.   In the later years of the Burger and early Rehnquist Courts, the Justices affirmed and restated these pro-parent positions on many occasions.  For example, we read in *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978): "We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected").  Or in, *Parham v. J. R.*, 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), the Court held that, "Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course".  *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), simply affirmed "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child".

38.   As noted above, Dr. William Todd Overcash alleges and will prove at trial by a preponderance of the credible evidence that the Florida Domestic Relations Code as construed, applied, and implemented by the Florida Domestic Relations Courts seek to destroy the jurisprudence upholding Western Civilization's concepts

of the family as a unit with broad parental authority over minor children and thus is designed to and in fact subverts the fundamental liberty interest of parents in the care custody, and management of their children.

39.    No party has alleged, nor has any court ever found, that Defendant William Todd Overcash, M.D., is or ever was an unfit parent. That aspect of the case is supremely and particularly important, because (as Justice O'Connor most recently explained in *Troxel v. Granville*) there is a strong presumption that fit parents act in the best interests of their children:

> "[O]ur constitutional system long ago rejected any notion that a child is the mere creature of the State and, on the contrary, asserted that parents generally have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations. ... The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children." (***citations omitted***)(alteration in original) (internal quotation marks and citations omitted).

40.    Accordingly, so long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children. ***Troxel v. Granville***, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

41.    In short, in a long line of cases, the Supreme Court has held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the right to direct the education and upbringing of one's children (repeatedly citing *Meyer* and *Pierce* as the foundational cases on this point). In light of this extensive precedent, it cannot now be doubted

that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of EACH parent to make decisions concerning the care, custody, and control of their children.

42. Attorney Mark D. Shelnutt and Judge Barbara Gurrola have agreed outside of court, conspired, and worked openly together in defiance of due process for the past year to incarcerate William Todd Overcash to prevent him from doing any of these things. The Florida Domestic Relations Courts want to take down the primary caretaker (if he is an upper class white male professional) every chance they get, but secondarily because Mark D. Shelnutt & Lori Foultz see in Overcash (without any unnecessary play on words), their ultimate "cash cow" and source of support for distinctly non-traditional, anti-WASPy parasitic lifestyles.

43. Paradoxically, and as if to confuse and confound any observer, the Plaintiff Lori Foultz has attempted to alienate Defendant's daughter from her father, in part, by leveling the surprising accusation that the Defendant is "not a Christian." However topsy-turvy this accusation may be, it confirms the role of religious subversion in the unraveling of this family, and so many other families. The Court and Attorney Shelnutt have similarly, bizarrely, accused the Defendant of caring only for his materialistic, extravagant lifestyle when in fact the Defendant has only stayed out of bankruptcy owing to his own traditional pride and values.

## ABITRARY & CAPRICIOUS MISUSE OF FLORIDA CONTEMPT LAW TO DESTROY WHITE CHRISTIAN FATHERS' PARENTAL RIGHTS

44. Defendant further alleges that Florida state law as applied, particular, but not limited to directly Florida Rules of Criminal Procedure, Rules 3.830-3.840, has been manifestly redesigned by the Judiciary to discriminate against Upper Class White Males. Florida Rule of Criminal Procedure 3.830-3.840 are also designed

*William Todd Overcash, M.D., First Amended Notice of Civil Rights Removal*    15
*pursuant to 28 U.S.C. §§1443, 1447(d) and 42 U.S.C. §§12131-12132*
*December 30, 2013*

and implemented to act as an only flimsily disguised redistributive tax (a "taking of private property for public use without due process of law"). The use of sham judicial procedures to enforce such a redistributive tax directly collides with Federal law in such a way as to create two groups with radically disparate and unequal rights under the law: namely domestic relations attorneys and upper class white males articulating and advocating traditional American values.

45.   To reiterate: the purpose of the Florida Domestic Relations Code as implemented in the Courts by the Florida Criminal Procedures of Direct or Indirect Criminal Contempt have assumed the dual purposes of (1) suppressing the teaching of such traditional American values in the context of each fit parent's fundamental right to the care, education, and nurturing of his or her child (as discussed above, especially *Troxel v. Granville*), and (2) ensuring that the laws of the State of Florida so construed pose such a drastic threat to the First, Fifth and Ninth Amendment liberty and property rights of Upper Class White Males (especially substantial professionals such as Medical Doctors) as a (currently) politically disfavored, discrete and insular minority as to require Federal Intervention analogous to and directly comparable with Federal Intervention in other economic class-based racial civil rights issues both in the 1860s-70s and the 1950s-70s.

## PARENTAL RIGHTS TO EDUCATE CHILDREN AND THE PRESERVATION OF RACIAL IDENTITY

46.   As the United States ratification of the "Genocide Treaty" recognizes, the transmission of culture to children in their parents' tradition is a fundamental right of racial and ethnic identity, and Western Civilization simply cannot survive without affording traditional parents the right to participate equally in the

education of their own children.  Dr. William Todd Overcash, M.D., alleges that the effect of the Florida Domestic Relations Code by the Florida Domestic Relations Courts, to him and to others, is genocidal under the following definition found in 18 U.S.C. §1091(a), subparts (4) and (6):

> **(a) Basic offense.**--Whoever, whether in time of peace or in time of war and with the specific intent to destroy, in whole or in substantial part, a national, ethnic, racial, or religious group as such--
> **(1)** kills members of that group;
> **(2)** causes serious bodily injury to members of that group;
> **(3)** causes the permanent impairment of the mental faculties of members of the group through drugs, torture, or similar techniques;
> **(4)** subjects the group to conditions of life that are intended to cause the physical destruction of the group in whole or in part;
> **(5)** imposes measures intended to prevent births within the group; or
> **(6)** transfers by force children of the group to another group;

47.     Defendant specifically alleges that the post-dissolution and post-final custody determination practices of the Florida Domestic Relations Courts, in conformity with Florida Domestic Relations Code, (4) has the effect of subjecting WASPs such as himself to conditions of life (multiple repeated and successive arbitrary and capricious deprivation of property and income above and beyond alimony and child-support requirements, judicial demands of forced labor [in spite of permanent disability] to support ex-wife's dependent lifestyle choices) designed to cause the physical destruction of his group in whole or in part and (6) by threats of repeated arbitrary & capricious incarceration without just or probable cause has transferred his child (and the children of other similarly situated upper middle class WASP males) to all other groups (non-traditional, multicultural, whites, non-whites and others opposed to the cultural values and norms of traditional WASPish America).

48.   Dr. William Todd Overcash, M.D., alleges and asks this Court to find and rule that a "multi-cultural" lifestyle in inimical to the maintenance of any one single cultural, ethnic, or racial identity and is therefore genocidal as against WASPs or any other traditional cultural, ethnic, or racial group[2].

## EXTENTION, MODIFICATION OR REVERSAL OF EXISTING LAW

49.   Defendant asks, within the meaning of Rule 11(b)(2) of the Federal Rules of Civil Procedure, that this United States District Court approve their good faith contentions, "warranted by [at least the more recent lines of U.S. Supreme Court precedent construing] existing law [and/] or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law," that Civil Rights Removal under 28 U.S.C. §1443(1) should be extended to "all situations where it can be clearly predicted by reason of the operation of a

---

[2]     Articles V and VI, Convention on the Prevention and Punishment of the Crime of **Genocide**, UN Document Series Symbol: ST/HR/, UN Issuing Body: Secretariat Centre for Human Rights, U.N., approved and proposed for signature and ratification or accession by General Assembly resolution 260 A (III) of Dec. 9, 1948, entry into force in the United States: Jan. 12, 1951 in accordance with article XIII (effective Nov. 4, 1998).
      Article II of the **Genocide Treaty** provides that "[i]n the present Convention, **genocide** means any of the following acts committed with intent to destroy, in whole or in part, a national, ethnical, racial or religious group, such as: ... (b) Causing serious bodily or mental harm to members of the group; [and] (c) Deliberately inflicting on the group conditions of life calculated to bring about its physical destruction in whole or in part."
      When a person with severe disabilities such as Defendant William Todd Overcash, M.D., is repeatedly threatened with deprivation of income, or commanded to work in spite of disability and to forego Private, State or Federal benefits necessary for survival and the "independent living" and "economic self-sufficiency" objective of the ADA (42 U.S.C. §12101(a)(8)), such State conduct transgresses the **Genocide Treaty**.
      Article V of the **Genocide Treaty** addresses State Court Systems, requiring that "[t]he Contracting Parties undertake to enact, in accordance with their respective Constitutions, the necessary legislation to give effect to the provisions of the present Convention, and, in particular, to provide effective penalties for persons guilty of **genocide** or any of the other acts enumerated in article III." Thus, article V of the **Genocide Treaty** provides an additional basis for this Federal Court's exercise of jurisdiction over the Florida Domestic Relations Courts, whose policies, practices, procedures, standards, and criteria violate certain provisions of said **treaty**.

pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court." ***State of Georgia v. Rachel***, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966); ***Strauder v. State of West Virginia***, 100 U.S. 303, 25 L.Ed. 664 (1879).

## ARBITRARY & CAPRICIOUS USE OF FLORIDA CONTEMPT LAW TO SUPPRESS FIRST AMENDMENT RIGHTS TO FREEDOM OF SPEECH, TO PETITION, AND TO PEACEABLY ASSEMBLE

50.    As against Defendant William Todd Overcash, M.D., the primary purposes of the prosecution in this case are (1) to punish this defendant (and those associated with him, e.g. his sometimes gardener, household assistant, and anti-Shelnutt poster "standard bearer" Marla McNeil) for the exercise of his First Amendment Rights of freedom of speech, freedom of assembly (association), and the right peacefully to petition for redress of grievances and (2) to punish the Defendant (and those associated with him, e.g. Marla McNeil) for the Exercise of said rights in an underhanded, occult, or hermeneutic manner in violation of the 5th, 7th, and 9th Amendments to the 1787 Constitution of the United States of America, as well as parallel provisions of the Florida Constitution.

51.    In the alternative, Defendant William Todd Overcash, M.D., requests that the provisions of civil rights removal under and pursuant to 42 U.S.C. §1443(1) be extended to cover and include situations where a comprehensive state statutory scheme has been so construed and applied to a discrete and insular, politically disfavored, minority such as Upper Class White Males targeted by the Domestic Relations Courts, especially but not limited to those involved with Upper Middle Class dissolution of marriage proceedings, for the purposes of wealth confiscation and redistribution.

## UNCONSTITUTIONAL STATE STATUTORY SCHEME FOR CONTEMPT AS CAUSE FOR CIVIL RIGHTS REMOVAL:

52.    Florida has, by and through the application of §3.840 of the Florida Code of Criminal Procedure "direct contempt", denied William Todd Overcash due process and equal protection of the laws:

(1)    by allowing contempt for attorneys' fees without standing to claim domestic relations benefit to children or spousal support (alimony), the Florida courts have indeed irrationally and without any significant or compelling governmental purpose granted "title of nobility" (specially privileged and immune) status to divorce lawyers to have some special standing in the courts—including but not limited to the right to be paid, upon penalty of incarceration in a county jail or state penitentiary, which no other lawyer, professional person, or creditor enjoys.

(2)    by allowing "equitable" judgments for awards to property without fair notice and reasonable opportunity to defend.

53.    Florida state law, as construed NOT by the Florida Supreme Court but by and in the Florida Fourth District Court of Appeal's decision in *Wertkin v. Wertkin*, 763 So.2d 465 (Florida 4th DCA 2000), allows implementation and "operation of a pervasive and explicit state law" that does not require proof of "injury in fact" or "standing" to bring suit, at least in the context of an "equitable action" or motion for attorneys' fees and transfers of income and property disconnected from any claim of relevance to alimony or child support.

54.    Article III standing is an issue, which arises often on the "cutting edge" of new forms of litigation, such as citizen environmental lawsuits. In such suits, the Supreme Court has defined "the irreducible minimum of standing" to mean that:

> First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, ... and (b) actual or imminent, not conjectural or hypothetical.... Second,

there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

55.    Defendants contend that, under the Fourteenth Amendment, due process of law requires that any suit (including even a "Motion for Direct Contempt" filed four months after the fact) seeking to deprive any person of life, liberty, or property must be brought by an injured party with what has come to be referred to as "Article III Standing" in the Federal Courts.   The Third Circuit has recently addressed possible differences between state vs. federal standing in *Good v. City of Philadelphia*, 539 F.3d 311, see esp. 318-322, (USCA 3rd Cir., 2008) without addressing whether the Fourteenth Amendment imposes a jurisdictional floor.

56.    Defendants submit that the Florida 4th D.C.A. in *Wertkin v. Wertkin* has done nothing short of authorizing judicial theft of money and property and coercion to surrender other intangible rights (such as the Defendant's parental rights) by allowing domestic relations attorneys authority to petition for the seizure of money, property, and other tangible and intangible rights, including parental rights to nurture and education of children, without requiring proof or even evidence of true-domestic-relations-relevance or standing (i.e. relationship to child support or alimony)[3].

---

[3]    Standing is the substantive due process notion of what a party must do in order to "open the doors of the courthouse", i.e. to have the legal right to bring a legal action through our judicial system. There is nothing more fundamental to distinguishing between "sound" and "frivolous" lawsuits, unless we are to abolish that concept all together.  Without the protective concept of standing, anyone could sue

*William Todd Overcash, M.D., First Amended Notice of Civil Rights Removal*      21
*pursuant to 28 U.S.C. §§1443, 1447(d) and 42 U.S.C. §§12131-12132*
*December 30, 2013*

57.   The present case, in which Lori Foultz by and through Mark D. Shelnutt presents her motion and seeks to enforce contempt based on a retracted statement regarding payment of property taxes in a case-context wherein Shelnutt is constantly seeking to extract money for Foultz' attorneys' fees shows the kind of arbitrary and capricious criminal prosecutions that are allowed in a domestic relations court system which disregards all constitutional limitations normally imposed by and through the concept of "due process of law."   There are now, in Florida, two classes of citizens—divorce attorneys ("judicially authorized thieves") and their white upper-middle class male victims, and only the judicially authorized thieves are protected by law.

58.   Defendant further contends that in such suits as to deprive individuals of life, liberty, and property, the strictest standards of actual notice must be applied, and that only indirect or inferential notice is insufficient. The Florida Domestic Relations Courts' customary practice in attorneys' fee collection litigation appears to be to allow defaults to be taken without personal service of process, or with fraudulently asserted service of process, contrary to all traditional standards of due process.

59.   Several filings in November 2013, by Mark D. Shelnutt (attached herein as Exhibits B-D) were the final notice that Overcash's First, Fifth, Seventh, and Ninth Amendment rights were not only being denied, but could not possibly be claimed, much less enforced, enforced in the Marion County Florida Circuit Courts.   On December 4, 2013, Overcash received a "Notice" that Shelnutt was seeking an addition $43,000.00 and the obvious presumption that his property could by mere

---

anyone at any time, and this would either ultimately cause legal anarchy or, perhaps to Shelnutt's advantage, an extremely rapid enrichment of the bar.

"notice" be so readily seized was hence in and of itself a proper final trigger for the filing of this Notice of Civil Rights Removal pursuant to 28 U.S.C. §1446(b):

> **(b) Requirements; generally—(1)** The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

## ALTERNATIVE CONTENTION: RESTORE ORIGINAL MEANING OF STATUTE ESTABLISHED BY EXPRESS CONGRESSIONAL LANGUAGE: THE BRUTALLY LIMITING JUDICIAL CONSTRUCTION and APPLICATION of 28 U.S.C. §1443 MUST BE MODIFIED

60.    As allowed by Rule 11(b)(2) of the Federal Rules of Civil Procedure, Defendant William Todd Overcash, M.D., contends that civil rights removal may and must be reinterpreted. As argued above, Defendant William Todd Overcash, M.D., submits that his social standing and cultural values are under attack because he is an upper middle class white male protestant (WASP) whose values are incompatible with the multi-cultural "Brave New World[4]" favored by the Florida

---

[4]    By "Brave New World" the Defendant means a world in which the State has entirely or almost entirely supplanted the family as not only the basic force and structure of upbringing and education, but also of procreation and reproduction itself. Aldous Huxley's famous 1931 book ***Brave New World*** with eerie accuracy predicted a future (which is in large part already our present) of a society and culture shaped and dominated by abortion, birth control, child sexualization, complete suppression of individual autonomy and parental succession and family, and the removal of all who express individual ambition, commitment, ideas, or passion to reeducational centers.

Ancient cultural traditions such as Anglo-Saxon Protestantism, Christianity and general, the literature of the English language, or any traditional literature composed by "Dead White Males" is absolutely suppressed and abandoned in Huxley's "Brave New World", along with the concepts of Constitutional Government, Equality, and Due Process of Law, and these ancient

*William Todd Overcash, M.D., First Amended Notice of Civil Rights Removal*     23
*pursuant to 28 U.S.C. §§1443, 1447(d) and 42 U.S.C. §§12131-12132*
*December 30, 2013*

Domestic Relations Code, Courts and educational system, and that all of the proceedings in this case may be seen as not merely culturally, ethnically, racially, and socially discriminatory, but in fact, genocidal.

61.     However, an alternative challenge to the standard construction of 28 U.S.C. §1443 in its current judicially crafted interpretation (of an otherwise race-neutral statute) amounts to nothing more than a race-based affirmative action program abolished (because there is no compelling governmental interest involved in the establishment of such a narrow program).

62.     Civil Rights Removal always should have been applied to give effect to each words in the statute as written, not some broad "labor saving" clause to keep cases out of the Federal System, but to implement constitutional checks and balances. Accordingly, Civil Rights Removal is entitled to a new birth of freedom, and must be reinterpreted and so construed and consistently applied as to allow Federal Court review of any systematic, state law approved and implemented, mass deprivation of fundamental constitutional rights.

63.     As enacted by Congress and codified into "positive law," the Civil Rights Removal Statute, 28 U.S.C. §1443 states, in full:

28 U.S.C.A. § 1443

§ 1443. Civil rights cases

Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

**(1)** Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights

---

cultural traditions are likewise under constant attack in the Florida Domestic Relations Courts acting under and implementing the Florida Domestic Relations Code.

*William Todd Overcash, M.D., First Amended Notice of Civil Rights Removal      24*
*pursuant to 28 U.S.C. §§1443, 1447(d) and 42 U.S.C. §§12131-12132*
*December 30, 2013*

of citizens of the United States, or of all persons within the jurisdiction thereof;

**(2)** For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 938.)

64.    This statute, on its face, makes no reference to race, color, creed, national origin, sex, or any other categorical limitation.   Congress enacted 28 U.S.C. §1443(1) to protect "any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof" while 28 U.S.C. §1443(2) apparently, facially, permits invocation of the protection of Federal Courts when a defendant is prosecuted or sued, "For any act under color of authority derived from any law providing for equal rights." The Civil Rights removal statute thus appears to have been designed, enacted and formulated as part of the system of "checks and balances" between state and federal power to ensure the protection of all fundamental rights enumerated and protected by implication under the Constitution of the United States.

65.    Civil Rights Removal is almost unique in the Judicial Code of the United States. Unlike almost every other provision permitting removal, an order granting a Motion to Remand to State Court is appealable, *as of right*; 28 U.S.C. §1447(d). Likewise, the Third Circuit has affirmed that the civil rights removal statute constitutes a narrow exception to the rule that state court action may be removed to federal district court only if federal jurisdiction is evident on face of plaintiff's well-pleaded complaint. ***Davis v. Glanton,*** 107 F.3d 1044 (3rd Cir., 03-03-1997). While the Eleventh Circuit has not directly addressed this question, an opinion

from the Northern District of Georgia, **Rogers v. Rucker**, held some 21 years ago (with dicta very relevant to the present action) that the second prong of statutory exception to well-pleaded complaint rule for certain civil rights actions, which requires a showing that party seeking removal is denied or cannot enforce specific federal right in state court, normally entails showing that denial be manifest in formal expression of state law; **however, narrow exception exists when lawsuit filed in state court is itself the act by which removing party's civil rights are violated**. **Rogers v. Rucker**, 835 F.Supp. 1410, (N.D.Ga. 1993). It can, of course, be argued that Defendant William Todd Overcash can show both specific violations in the lawsuit against him and (as alleged above) in the Florida Statutes.

66.    A comparison of §1443 to the other sections permitting removal in the Judicial Code of the United States demonstrates the breadth of its scope, as enacted by Congress. Thus, unlike §1441(a), which embraces only *civil* actions, removal under §1443 includes both *civil* and *criminal* actions. Unlike §1442a, which stipulates that the Notice of Removal must be filed "before the trial or final hearing" in the case, §1443, by its demonstrable text, places no limitation on the stage of the proceeding at which point the right of removal must be exercised, or it is waived.

67.    In short, as the Sixth Circuit Court of Appeals observed in **Conrad v. Robinson**, 871 F.2d 612, 614 (6th Cir. 1989), the Civil Rights Removal Statute **"*is specifically designed to extricate protected persons from state civil and criminal prosecution and provide instead a federal forum.*"** Very clearly, Congress intended that "*where a state proceeding...is initiated in order to harass or intimidate a defendant for exercising his civil rights...*" such a person should be able to claim the safe harbor of a Federal Court.

Harold S. Lewis, Jr. & Elizabeth J. Norman, *Civil Rights Law and Practice* (2nd ed. 2001), §5.50: p 467.

68.     In spite of this very broad language, and reasonable constitutional purpose (as an incident of the maintenance of the Supremacy of the United States Constitution of 1787, especially as amended in 1791 by the Bill of Rights) the United States Courts have unfairly and unreasonably (and Defendant William Todd Overcash, M.D., would contend unconstitutionally) restricted the scope of 28 U.S.C. §1443 to protect ONLY race-based discrimination enacted as a matter of state law, including expressly race-based customs, practices, and policies having the force or effect of law.

69.     In so doing, the Federal Courts have, whether intentionally or unintentionally, and Defendants here contend unconstitutionally, transformed the Civil Rights Removal Statute from its apparent and originally intended purpose as a sword against into a shield to protect many official state laws and policies which systemtically violate or infringe upon **Carolene Products** "Footnote 4" enumerated rights (see, e.g. **United States v. Carolene Products, Inc.**, 304 U.S. 144, 153, n. 4[5], 58 S.Ct. 778, 82 L.Ed. 1234 (1938).

70.     The initial premise in the judicial construction of Civil Rights Removal appears reasonable enough:   Removal will be appropriate in the present case, pursuant to 28 U.S.C. §§1443(a) & 1447(d) only if Defendant can in good faith allege, as he does herein below, that the procedural and substantive safeguards of Florida law relating to Direct Contempt (at least as applied in the Domestic Relations Courts in the Fifth Judicial Circuit in and for Marion County), have such slight and nugatory effect, either on their face or as applied, that the relevant

---

[5]     "Footnote 4" has become shorthand in American Constitutional laws for fundamental rights jurisprudence and "strict scrutiny" in the protection of the same.

Florida Contempt laws as applied in the Domestic Relations Courts constitutes on of those:

> . . . . rare situations where it can be clearly predicted by reason of operation of pervasive and explicit state or federal law that these rights will inevitably be denied by very act of bringing defendant to trial in state court. 28 U.S.C.A. § 1443(1).

*Greenwood v. Peacock*, 384 U.S. 808, 828, 83 S.Ct. 1800, 1812, 16 L.Ed.2d 944 (1966).

71.     However, the Judicial Construction of the Civil Rights Removal Statute rapidly transforms this broad check and balance on state power into a little or nothing more than a judicially crafted affirmative action (aka "benignly or affirmatively discriminatory, cf. *Regents of the University of California v. Bakke, City of Richmond v. J.A. Croson,* and their progeny[6]) program for promoting minority rights at the expense of the majority:

> . . . . the phrase 'any law providing for equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality. Thus, the defendants' broad contentions under the First Amendment and the Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under §1443, because the guarantees of those clauses are phrased in

---

[6]     The principles articulated by the United States Supreme Court repeatedly over the past twenty years that all government racial classifications (including Federal classifications) must be analyzed by a reviewing court under strict scrutiny in the modern line of equal protection cases going back to the 1989 decision in *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854, (U.S.Va., Jan 23, 1989).

Ten years after *Bakke* came *Croson,* but following *Croson* the Court handed down in less than another decade a strongly consistent series of cases and opinions expanding on Justice O'Connor's ruling that all race-based schemes should be examined under the "strict scrutiny" standard, namely: *Adarand Constructors, Inc. v. Peña,* 515 U.S. 200, 227, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995), *Johnson v. California,* 336 F.3d 1117 (9th Cir., Jul 28, 2003), *Grutter v. Bollinger,* 539 U.S. 306, 123 S.Ct. 2325, 156 L.Ed.2d 304, (U.S., Jun 23, 2003), *Johnson v. California,* 543 U.S. 499, 125 S.Ct. 1141, 160 L.Ed.2d 949, (U.S., Feb 23, 2005).

terms of general application available to all persons or citizens, rather than in the specific language of racial equality that §1443 demands. As the Court of Appeals for the Second Circuit has concluded, §1443 'applies only to rights that are granted in terms of equality and not to the whole gamut of constitutional rights.' 'When the removal statute speaks of 'any law providing for equal rights,' it refers to those laws that are couched in terms of equality, such as the historic and the recent equal rights statutes, as distinguished from laws, of which the due process clause and 42 U.S.C. §1983 are sufficient examples, that confer equal rights in the sense, vital to our way of life, of bestowing them upon all.'

*State of Georgia v. Rachel*, 384 U.S. 780, 792, 86 S.Ct. 1783, 1790 (1966).


## PRAYER FOR RELIEF

WHEREFORE, Defendant William Todd Overcash prays in this First Amended Notice of Civil Rights Removal that this Court first take note of his Notice of Removal, and second take notice of his twin pleas (1) that the scope Civil Rights Removal be clarified, reinterpreted, extended, or modified to include and to apply to all suits such as this one raising charges of express "Public Service" discrimination inimical to "accommodation" and effectively denying equal access to the courts on grounds of disability and (2) that the racial component requirement of Civil Rights Removal be clarified, reinterpreted, extended, or modified either to include and apply to anti-White ("affirmative action" type "benign" discrimination or to be construed in an absolutely race-neutral manner giving full force and effect to every word of the original Congressional enactment in establishing 28 U.S.C. §1443 instead of basically "construing this statute out of existence."

Defendant also prays here and now that all proceedings and actions (including the contempt proceedings) are and ought to remain enjoined during the

*William Todd Overcash, M.D., First Amended Notice of Civil Rights Removal*      29
*pursuant to 28 U.S.C. §§1443, 1447(d) and 42 U.S.C. §§12131-12132*
*December 30, 2013*

pendency of this removal, and that Defendant be allowed to plead his counterclaims and, if necessary, consolidate this removed lawsuit with a separate Complaint for Civil Rights Violations arising under the ADA or traditional civil rights statutes such as 42 U.S.C. §§1981-1982, or under racketeering statutes such as 18 U.S.C. §1961 et seq., or unfair trade practice statutes (state and Federal) against Mark D. Shelnutt and other parties.

Defendant William Todd Overcash, in particular, wishes and intends to file a complaint for declaratory relief (as permitted by 42 U.S.C. §§1983 & 1988 as amended in 1996) against certain Marion County Judges. *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565 (1984) and *Bauer v. Texas*, 341 F.3d 352 (5th Circuit 2003).

Defendant William Todd Overcash also prays that the Court grant him all such other and further relief to which he may be otherwise entitled, under the Constitutions of the United States and Florida, by statute, at common law, or in equity.

Respectfully submitted,

Monday, 30 December 2013

By
Defendant William Todd Overcash, M.D.
*Pro se/in propria persona*
14311 E 128th Street
Oklawaha, Florida 32179

Telephone: 352-812-8819
E-mail: WTObariatric@aol.com

## PROOF OF SERVICE

I certify and declare under penalty of perjury that I served a true and correct copy of the above-and-foregoing Defendant's First Amended Notice of Removal on and provided this same document to the attorney of record for Petitioner and Movant Lori Foultz (fka "Lori Overcash") by certified mail addressed to the office address currently listed for Mark Deland Shelnutt with the State Bar of Florida:

Mark Deland Shellnut
1404 East Silver Springs Boulevard
Ocala, Florida 34470
And by Facsimile Transmission of the same to:
Fax: 352-401-9485
And by E-mail to:
mshelnutt@shelnuttpa.com

Signed & Executed on Monday, 30 December 2013 at Oklawaha, Florida.

By:

Defendant William Todd Overcash, M.D.
*Pro se/in propria persona*
14311 E 128th Street
Oklawaha, Florida 32179

Telephone: 352-812-8819
E-mail: WTObariatric@aol.com

# Exhibit A:
# Motion for Direct Criminal Contempt
# Filed by Mark D. Shelnutt
# June 2013

IN THE CIRCUIT COURT, FIFTH JUDICIAL CIRCUIT,
IN AND FOR MARION COUNTY, FLORIDA

IN RE: The Former Marriage of:      CASE NO.: 2002-4655-DR-FJ

WILLIAM T. OVERCASH,

      Former Husband,

and

LORI A. FOULTZ,

      Former Wife.

_____/

## MOTION FOR DIRECT CRIMINAL CONTEMPT

**COMES NOW**, the Former Wife, LORI A. FOULTZ, by and through her undersigned attorney of record, and files with the Court her Motion for Direct Criminal Contempt in the above style cause, and as ground therefore would state:

1.    A hearing was held before this Court on February 27, 2013 in which both parties were present and represented by their respective counsels. Scheduled for hearing that day was a litany of case management issues and motions for contempt for non-payment of support obligations by the Former Husband. Attached as Exhibit "A" is the Notice for Hearing.

2.    The Former Husband was testifying before and in the direct presence of the Court as to his ability to pay the Court-order attorney's fees to counsel for the Former Wife. On direct examination, the following statements were made between Attorney Gordon and the Former Husband:

> Q:    Okay. What is your position today, as we sit here today, in terms of what you have available in your bank account to pay these fees?

1



| A: | I have the amount to pay Lori that $2,500 for the month of February which I thought I had paid. |
|----|----|
| Q: | Twenty-four. |
| A: | Twenty-four. And other than that, I am financially broke because I issued checks for property taxes. |
| Q: | How much were those? |
| A: | $8,000.00. |
| Q: | Is that for the home that we're talking about, the equitable distribution on Ms. Foultz? |
| A: | The home and the farm. I think it's around $8,000.00. I know—I can't tell you the exact numbers, but the farm and the home had to be paid. |
| Q: | Okay. Two separate bills? |
| A: | Right. |
| Q: | You've already done that? |
| A: | Yes. |

The complete transcript from the February 27, 2013 hearing is attached as Exhibit "B." For the Court's convenience, the above conversation begins on page 82, line 11.

3.     As of the date of filing this motion, the Former Husband has not paid the property taxes for either property that he attested to paying. Records from the Marion County Property Appraisers are attached as Exhibit "C."

4.     This Court should find that the Former Husband's willful misrepresentations to the Court were an act of perjury and punishable by criminal contempt, pursuant to Florida Rules of Criminal Procedure 3.840. The Former Wife would ask that this Court enter its Order to Show Cause, pursuant to this Rule, to order the Former Husband to appear at a time and place as specified by this Court, to enter a plea to a charge of direct criminal contempt of either guilty or not guilty, to hold a hearing on same, and to find that the Former Husband is in willful criminal contempt for his calculated attempts to hinder and obstruct the administration of justice.

5.     The Wife has retained the Office of Mark D. Shelnutt, P.A. to represent her in this matter and has agreed to pay a reasonable fee for the services. Due to the Former Husband's

2

actions, the Wife has been required to retain the undersigned counsel to file this Motion and has incurred attorney's fees and costs.

WHEREFORE, the Former Wife would respectfully requests that this Honorable Court enter its Order finding the Former Husband in direct criminal contempt for his statements made before this Court, that a hearing be held on this Court's Order to Show Cause, and that the Former Husband come before the Court and, upon his failing to produce evidence that he is not in direct criminal contempt pursuant to the above statute, that he be incarcerated for a reasonable time for those his actions, awarding reasonable attorney's fees and costs to the Former Wife, and such other and further relief as may be deemed reasonable and necessary under the circumstances.

DATED this _____ day of June, 2013.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by Email to Beth M. Gordon, Esquire, thegordonlawfirm@aol.com, Robert E. Taylor, Jr., Esquire, Robert@rtaylorlaw.com, sonja@rtaylorlaw.com, and Janet Behnke, Esquire, Guardian Ad Litem, janet@behnkelaw.net and pam@behnkelaw.net, this _____ day of June, 2013.

*MARK D. SHELNUTT, P.A.*

By _____
Mark D. Shelnutt, Esquire
Florida Bar No.: 304042
Rebecca A. Guthrie, Esquire
Florida Bar No.: 0030028
1404 East Silver Springs Blvd.
Ocala, Florida 34470
Telephone: (352) 629-6203
Facsimile: (352) 401-9485
mshelnutt@shelnuttpa.com
skoener@shenuttpa.com
Attorneys for the Former Wife

3

# Exhibit B:
# Shenutt's Most Recent Filings
# In December 2013, claiming
# Further Attorneys' Fees

IN THE COUNTY COURT, FIFTH JUDICIAL CIRCUIT,
IN AND FOR MARION COUNTY, FLORIDA

IN RE: The Former Marriage of:                    CASE NO.: 2002-4655-DR-FJ

WILLIAM T. OVERCASH,

      Former Husband,

and

LORI A. FOULTZ,

      Former Wife.

_____/

## MOTION FOR ORDER TO SHOW CAUSE

COMES NOW, the Former Wife, LORI A. FOULTZ, by and through her undersigned counsel of record, and files with this Court her Motion for an Order to Show Cause, directed as to why the Former Husband, WILLIAM T. OVERCASH, should not be held in contempt for his failure to comply with this Court's Order on Former Wife's Motion to Compel, and Motion for Attorney's Fees and Sanctions dated April 2, 2013, in the above styled cause. A copy of the Motion dated April 2, 2013 and the Order dated October 7, 2013 are attached hereto as Exhibits "A and B'. Counsel for the Former Wife would state:

1.    The Former Husband, through counsel for record at the time, was served with the Former Wife's Motion to Compel, and Motion for Attorney's Fees and Sanctions on April 2, 2013.

2.    This Court entered its Order on Former Wife's Motion to Compel, and Motion for Attorney's Fees and Sanctions on October 7, 2013.

3.    Pursuant to paragraph 1 of the Order, the Former Husband was to provide all documents requested in the Former Wife's Fifth Request to Produce, within sixty (60) days of the entry of this Order.

4.     As of the date of the filing of this Motion, counsel for the Former Wife has not received any documents.  As a result of the Former Husband's failure to provide this information, the Former Wife has incurred additional attorney's fees and costs in the necessity of having to file this Motion.

WHEREFORE, the undersigned respectfully request this Honorable Court to enter its Order to Show Case against the Former Husband, WILLIAM T. OVERCASH, requiring the Former Husband to appear before this Court, and to show cause to the Court as to why he should not be held in contempt for his failure to provide the undersigned with the documents as previously Ordered by this Court, along with an award of reasonable attorney's fee and costs and such other and further relief as deemed equitable under the circumstances.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing shall be served by Email delivery to **Robert E. Taylor, Jr., Esquire**, robert@rtaylorlaw.com and sonja@rtaylorlaw.com, this _25_ day of December, 2013.

*MARK D. SHELNUTT, P.A.*

By:_____
Mark D. Shelnutt, Esquire
Florida Bar No.: 304042
Rebecca A. Guthrie, Esquire
Florida Bar No.: 0030028
1404 East Silver Springs Blvd.
Ocala, Florida 34470
Telephone: (352) 629-6203
Facsimile: (352) 401-9485
mshelnutt@shelnuttpa.com
skoerner@shelnuttpa.com
Attorney's for the Former Wife

IN THE CIRCUIT COURT, FIFTH JUDICIAL CIRCUIT,
IN AND FOR MARION COUNTY, FLORIDA

IN RE: The Former Marriage of:                    CASE NO.: 2002-4655-DR-FJ

WILLIAM T. OVERCASH,

       Former Husband,

and

LORI A. FOULTZ,

       Former Wife.

_____/

## MOTION TO COMPEL,
## MOTION FOR ATTORNEY'S FEES AND SANCTIONS

    COMES NOW, the Former Wife, LORI A. FOULTZ, by and through her undersigned counsel, and files with the Court her Motion to Compel and Motion for Attorney's Fees and Sanctions, and as grounds would state as follows:

    1.    This Motion is brought pursuant to Rule 1.380, *Fla.R.Civ.P.*

    2.    Counsel for the Former Wife served a Fifth Request to Produce on the counsel for the Former Husband on or about February 14, 2013. (A copy of the Request to Produce is attached hereto as Composite Exhibit "A".)

    3.    Pursuant to *Florida Rules of Civil Procedure* 1.350, the Former Husband's Response was due on or before March 18, 2013.

    4.    That all efforts to resolve this matter with opposing counsel have been unsuccessful. (See Good Faith Letter attached hereto as Composite Exhibit "B".)

    5.    That the Former Wife has retained the undersigned counsel in bringing this Motion and has agreed to pay him a reasonable attorney's fee.



**WHEREFORE**, the Former Wife, LORI FOULTZ, prays that an Order be entered as follows:

A. Compelling the Former Husband to Respond to the Former Wife's Fourth Request to Produce as required by Florida Rule of Civil Procedure 1.350.

B. Sanctioning the Former Husband for his failure to comply with discovery.

C. An award of attorney's fees and costs in bringing this action.

D. Any other relief that is necessary and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by Email delivery to Beth M. Gordon, Esquire, thegordonlawfirm@aol.com, Robert E. Taylor, Jr., Esquire, Robert@rtaylorlaw.com and sonja@rtaylorlaw.com, and Janet Behnke, Esquire, janet@behnkelaw.net and pam@behnkelaw.net, this ___ day of April, 2013.

*MARK D. SHELNUTT, P.A.*

By _____

Mark D. Shelnutt, Esquire
Florida Bar No.: 304042
Rebecca A. Guthrie, Esquire
Florida Bar No.: 0030028
1404 East Silver Springs Blvd.
Ocala, Florida 34470
Telephone: (352) 629-6203
Facsimile: (352) 401-9485
mshelnutt@shelnuttpa.com
skoerner@shelnuttpa.com
Attorneys for the Former Wife

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

IN RE: The Former Marriage of:                    CASE NO.: 2002-4655-DR-FJ

WILLIAM T. OVERCASH,

        Former Husband,

and

LORI A. FOULTZ,

        Former Wife.

_____/

### FORMER WIFE'S FIFTH REQUEST TO PRODUCE

To:   WILLIAM T. OVERCASH
      C/O Beth M. Gordon, Esquire
      PO Box 734
      Williston, Florida 32696
      thegordonlawfirm@aol.com

      AND

      Robert E. Taylor, Jr., Esquire
      10014 North Dale Mabry Hwy., Suite 101
      Tampa, Florida 33618
      robert@rtaylorlaw.com

Pursuant to Rule 12.285 *Fla.Fam.L.R.P.*, and Rule 1.350, *Fla.R.Civ.P.*, you are requested

to produce to the Former Wife, within thirty (30) days after the service of this request, to Mark

D. Shelnutt, Esquire, at the Law Office of Mark D. Shelnutt PA, 1404 East Silver Springs

Blvd., Ocala, Florida 34470 the following items for the purpose of inspection and copying:

     1.     Copies of retainer contract, billing statements, and any other documents showing

payments of attorney's fees, expert fees, or expenses to Rose M. Marsh, Esquire, Cheney Mason,

Esquire, Robert Taylor, Esquire, Beth Gordon, Esquire, Dr. Flora A. Pinder, or any other attorney

or expert representing you in the this case, from the time that the Former Husband filed his



EXHIBIT

Supplemental Counterpetition, including, but not limited to, proof of credit card payments, check

payments, cash payments, or any other form of payment, and a current billing statement showing

how much you have paid to date.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished

by Email delivery to the above-named addressee, this 14th day of February 2013.

*MARK D. SHELNUTT, P.A.*

By

Mark D. Shelnutt, Esquire
Florida Bar No.: 304042
Rebecca A. Guthrie
Florida Bar No.: 0030028
1404 East Silver Springs Blvd.
Ocala, Florida 34470
Telephone: (352) 629-6203
Facsimile: (352) 401-9485
mshelnutt@shelnuttpa.com
skoerner@shelnuttpa.com
Attorneys for the Former Wife

## Sharon Koerner

| | |
|---|---|
| From: | Sharon Koerner |
| Sent: | Thursday, February 14, 2013 8:23 AM |
| To: | 'Beth Gordon, Esq.'; 'Robert Taylor'; 'Sonja Taylor' |
| Cc: | 'janet@behnkelaw.net' |
| Subject: | FW: SERVICE OF COURT DOCUMENTS |
| Attachments: | FORMER WIFE'S FIFTH REQUEST TO PRODUCE.pdf |
| | |
| Importance: | High |

From: Sharon Koerner
Sent: Thursday, February 14, 2013 8:18 AM
To: 'Beth Gordon, Esq.'; 'Robert Taylor'; 'Sonja Taylor'
Cc: 'janet@behnkelaw.net'
Subject: SERVICE OF COURT DOCUMENTS
Importance: High

| | |
|---|---|
| Court: | Fifth Judicial Circuit, Marion County, Florida |
| Case No.: | 2002-4655-DR-FJ |
| Former Husband: | WILLIAM OVERCASH |
| Former Wife: | LORI FOULTZ |
| Title of Document (s): | Former Wife's Fifth Request to Produce |
| Sender's Name: | Sharon Koerner |
| Sender's Telephone No.: | (352) 629-6203 xt. 304 |

The enclosed document is being served upon you pursuant to Rule 2.516 of the Florida Rule of Judicial Administration.

Thanks,

Sharon Koerner
Paralegal

Mark D. Shelnutt, P.A.
1404 E. Silver Springs Blvd. | Ocala, FL 34470
Tel: 352-629-6203 | Fax: 352-401-9485
skoerner@shelnuttpa.com

PLEASE NOTE: Although electronic mail is sent instantaneously, it is not always possible for our office to review or respond instantaneously to electronic mail. Therefore, if you have an urgent issue, please call our office.

**CONFIDENTIALITY NOTE**

1

The Law Offices of
# Mark D. Shelnutt, P. A.
Marital & Family Law
Criminal Defense & DUI

March 21, 2013

VIA EMAIL: thegordonlawfirm@aol.com
Beth M. Gordon, Esquire
PO Box 734
Williston, Florida 32696

VIA EMAIL: Robert@rtaylorlaw.com
Robert E. Taylor, Jr., Esquire
10014 North Dale Mabry Hwy., Suite 101
Tampa, Florida 33618

RE:   Foultz v. Overcash
      Case No.: 2002-4655-DR-FJ

Dear Counsel:

This is to advise you that the Former Husband has not responded to the Former Wife's Fifth Request to Produce, which was due on or about March 18, 2013.

Please provide your client's response to the Request to Produce within ten (10) days from the date of this letter. If I do not have the completed response to the Request to Produce within the time period requested, I will have no alternative but to file a Motion to Compel in order to adequately protect my client's rights. Furthermore, I will seek attorney's fees and costs incurred in doing so.

Thank you for your immediate attention to this matter.

Very truly yours,

Mark D. Shelnutt, Esquire

MDS/sk
cc:   Lori Foultz, Former Wife

1404 East Silver Springs Boulevard • Ocala, Florida 34470
Telephone: (352) 629-6203                    Facsimile: (352) 401-9485

EXHIBIT

RECEIVED
OCT 0 8 2013
BY:--------------------

IN THE CIRCUIT COURT, FIFTH JUDICIAL CIRCUIT,
IN AND FOR MARION COUNTY, FLORIDA

IN RE: The Former Marriage of:

CASE NO.: 2002-4655-DR-FJ

WILLIAM T. OVERCASH,

        Former Husband,

and

LORI A. FOULTZ,

        Former Wife.

_____/

## ORDER ON FORMER WIFE'S MOTION TO COMPEL, MOTION FOR ATTORNEY'S FEES AND SANCTIONS, dated April 2, 2013

THIS CAUSE, having come before the Court for hearing on September 18, 2013, upon the Former Wife's Motion to Compel, Motion for Attorney's Fees and Sanctions, dated April 2, 2013, and the Former Husband having appeared without counsel, Robert E. Taylor, Esquire, and the Former Wife appearing and represented by Mark D. Shelnutt, Esquire. The Court heard the argument of counsel and the Former Husband, the testimony of the parties, and reviewed the file and was otherwise fully advised in the premises. The Court makes the following findings of facts:

A.     The Court has jurisdiction over the parties and subject matter.

B.     The Former Husband was denied his Emergency Motion to Continue filed the night before this hearing due to his own actions in retaining counsel the afternoon of September 17, 2013. The Former Husband had notice that he was to retain counsel within twenty (20) days of the previous hearing, he failed to do so, and his Motion to Continue was not an emergency and it would have been far too prejudicial to the parties and the minor child to grant the continuance, after consideration of the extended delays this case has already incurred.

C.     The Former Wife served her Fifth Request to Produce on the Former Husband on or



about February 14, 2013 and sent a Good Faith Letter. The Former Husband has failed to fully comply with the records request.

ORDERED AND ADJUDGED as follows:

1.     The Former Wife's Motion to Compel is GRANTED.  The Husband shall provide all documents requested in the Former Wife's Fifth Request to Produce within _60_ days of the date of entry of this Order.

2.     The Court reserves jurisdiction over the Wife's request for attorney's fees and costs.

ORDERED in open court, DONE in Chambers at Ocala, Marion County, Florida, this 4 day of _October_, 2013, *nunc pro tunc*, September 18, 2013.

BARBARA GURROLA
Senior Circuit Court Judge

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S. Mail delivery to Mark D. Shelnutt, Esquire, mshelnutt@shelnuttpa.com, 1404 East Silver Springs Blvd., Ocala, Florida 34470; Robert E. Taylor, Jr., Esquire, robert@rtaylorlaw.com, 10014 North Dale Mabry Hwy., Suite 101, Tampa, Florida 33618, this 7 day of _October_, 2013.

Judicial Assistant

# Exhibit C:
# Subpoena to Marla McNeil
# Served Friday 22 November 2013
# Simultaneous with
# Arrest for Contempt of
# William Todd Overcash, M.D.

Electronically Filed 11/20/2013 01:32:37 PM ET

*** FILED: MARION COUNTY, FL DAVID R. ELLSPERMANN, CLERK 11/20/2013 13:32:36. ***

IN THE CIRCUIT COURT, FIFTH JUDICIAL CIRCUIT,
IN AND FOR MARION COUNTY, FLORIDA

IN RE: The Former Marriage of:                    CASE NO.: 2002-4655-DR-FJ

WILLIAM T. OVERCASH,
        Former Husband,
and

LORI A. FOULTZ,
        Former Wife.
_____/

## NOTICE OF ISSUANCE OF SUBPOENA

COMES NOW, the Former Wife, LORI A. FOULTZ, by and through her undersigned attorney and hereby gives notice that a Subpoena was issued for the following individuals:

| WITNESS | DATE OF ISSUE | DATE AND TIME OF APPEARANCE |
|---|---|---|
| Marla Marie McNeal | November 20, 2013 | December 12, 2013, at 3:00 p.m. |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by Email delivery to Robert E. Taylor, Jr., Esquire, robert@rtaylorlaw.com and sonia@rtaylorlaw.com, this 20th day of November, 2013.

*MARK D. SHELNUTT, P.A.*

By: _____
Mark D. Shelnutt, Esquire
Florida Bar No.: 304042
Rebecca A. Guthrie
Florida Bar No.: 0030028
1404 East Silver Springs Blvd.
Ocala, Florida 34470
Telephone: (352) 629-6203
Facsimile: (352) 401-9485
mshelnutt@shelnuttpa.com
skoerner@shelnuttpa.com
Attorneys for the Former Wife

# Exhibit D:
# Miscellaneous November 2013 Contempt Notices Served by Mark D. Shelnutt

This lawsuit involves my attorney, Chester Trowe, attempting to get former wife's name off of Wm. Todd Overcash's property for tax purposes and then to set up a note or a "lien" on the property pending Wm. Todd Overcash's final payment for divorce order.

Wm. Todd Overcash had already produced financials in divorce case; however, in both cases Mr. Shelnutt falsely states that he has not received them.

Please note the separate court records whereby, Mr. Shelnutt acknowledges that he has Wm. Todd Overcash's Financials presented multiple times and now has his most recent request for production and the fact that Mr. Shelnutt's own staff acknowledges that they had the financials.

Mr. Shelnutt achieved fraudulent presentation to the court, Judge Singbush, and achieved false arrest and imprisonment of Wm. Todd Overcash.

Please note that there was no filing of documented process service upon Wm. Todd Overcash in the court records.  It is claimed that Wm. Todd Overcash was served the day that he either collapsed in the court room with chest pain requiring ambulance transport to the nearest hospital or upon his arrest for failing to continue to pay Mr. Shelnutt attorney fees despite an upheld prenuptial agreement that bans attorney fees.  This banning of attorney fee payment has been upheld by the Florida Courts once divorce is granted and this divorce has been granted for over 7 years.

See attached Docket and Mr. Shelnutt's motion for arrest.

Marion County Clerk of the Circuit Court
Case 3:13-cv-00808-ACC-PRL Document 3 Filed 12/30/13 Page 51 of 75 PageID 320
Page 1 of 4

| CASE SEARCH | CASE TYPE SEARCH | DOCKET SEARCH |
| --- | --- | --- |

Website Home | Case Search Page | Case Search Help | Case Type Tables

back to search page

## CASE INFORMATION

**Case Number:** 42-2011-CA-000304-AXXX-XX
**File Date:** 01/31/2011
**Judge:** W JACK SINGBUSH

**Plaintiff :** OVERCASH WILLIAM TODD

**Defendant :** FOULTZ LORI ANN
*FKA : OVERCASH LORI ANN*

*ATTORNEY:* SHELNUTT MARK DELAND

### Dockets

| Date | Event | Count | Party | Amount |
| --- | --- | --- | --- | --- |
| 12/06/2013 | COPY OF:(SEE TEXT DESCRIPTION) | | OVERCASH WILLIAM TODD | $0.00 |
| | NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE | | | |
| 12/06/2013 | CLS:NTC OF VOLUNTARY DISMISSAL | | OVERCASH WILLIAM TODD | $0.00 |
| | WITHOUT PREJUDICE | | | |
| 12/02/2013 | ARREST AFFIDAVIT | | | $0.00 |
| | ON wILLIAM OVERCASH | | | |
| 11/26/2013 | WRIT BODILY ATTACHMENT SERVED | | OVERCASH WILLIAM TODD | $0.00 |
| | WILLIAM TODD OVERCASH 11/22/13 | | | |
| 11/25/2013 | RCPT-PYMT FROM COURT REGISTRY | | | $0.00 |
| 11/22/2013 | MOTION | | | $0.00 |
| | MOTION FOR WRIT OF BODILY ATTACHMENT ENTITLED ATTORNEY | | | |
| | AFFIDAVIT | | | |
| 11/22/2013 | WRIT OF BODILY ATTACHMENT | | FOULTZ LORI ANN | $0.00 |
| 10/30/2013 | ORDER ON SHOW CAUSE HEARING | | | $0.00 |
| | COURT'S RULING ON AMENDED ORDER TO SHOW CAUSE | | | |
| 10/30/2013 | CORR/MEMO TO JUDGES OFFICE | | FOULTZ LORI ANN | $0.00 |
| 10/22/2013 | AFFIDAVIT AS TO ATTORNEY FEES | | OVERCASH WILLIAM TODD | $0.00 |
| 09/23/2013 | SHOW CAUSE ORDER SERVED | | | $0.00 |
| | AMENDED ORDER TO SHOW CAUSE ATTACHED TO NOTICE OF FILING | | | |
| | SERVED ON SEPTEMBER 18TH, 2013 ON WILLIAM TODD OVERCASH | | | |
| 09/11/2013 | CORR/MEMO TO JUDGES OFFICE | | FOULTZ LORI ANN | $0.00 |
| 09/11/2013 | AMENDED ORDER | | | $0.00 |
| | TO SHOW CAUSE (REPLACE THE SEPTEMBER 16, 2013) | | | |
| | -PLTF TO APPEAR BEFORE JUDGE SINGBSUH ON 10/14/13 @ 1:30PM | | | |

Page 2 of 4
Marion County Clerk of the Circuit Court
Case 9:13-cv-00606-ACC-PRL Document 3 Filed 12/30/13 Page 52 of 75 PageID 321

| Date | Description | Party | Amount |
|---|---|---|---|
| 08/15/2013 | ORDER TO SHOW CAUSE | | $0.00 |
| | SET FOR 9/16/2013 AT 9:15 AM COURTROOM 4-A | | |
| 08/15/2013 | CORR/MEMO TO JUDGES OFFICE | | $0.00 |
| 08/12/2013 | CLERKS NOTE TO FILE NO DOC # | | $0.00 |
| | MOTION FOR ORDER TO SHOW CAUSE SENT TO JUDGE SINGBUSH | | |
| 08/05/2013 | MOTION FOR ORDER TO SHOW CAUSE | FOULTZ LORI ANN | $0.00 |
| 07/10/2013 | RETURN OF SERVICE | FOULTZ LORI ANN | $0.00 |
| | INDIVIDUAL SERVICE TO TODD OVERCASH ON 6/27/2013 | | |
| 06/14/2013 | NOTICE OF TAKING DEPOSITION | FOULTZ LORI ANN | $0.00 |
| | IN AID OF EXECUTION | | |
| | OF WILLIAM TODD OVERCASH ON 07/26/13 AT 8 AM | | |
| 04/10/2013 | FINAL JUDGMENT | | $0.00 |
| | ON ATTORNEY'S FEES AND COSTS | | |
| 04/10/2013 | CORR/MEMO TO JUDGES OFFICE | FOULTZ LORI ANN | $0.00 |
| 04/04/2013 | EVIDENCE RECORD FORM | | $0.00 |
| 01/04/2013 | ORD ALLOWING COUNSEL WITHDRAW | | $0.00 |
| | TROW & DOBBINS PA ARE DISCHARGED FROM RESPONSIBILITY | | |
| | AS COUNSEL FOR PLTF | | |
| 12/14/2012 | NOTICE OF UNAVAILABILITY | OVERCASH WILLIAM TODD | $0.00 |
| | DECEMBER 22, 2012 TO JANUARY 2, 2013 | | |
| | **EFILED DOCUMENT** | | |
| 12/14/2012 | AMENDED NOTICE OF HEARING | OVERCASH WILLIAM TODD | $0.00 |
| | JANUARY 3, 2013 AT 9:15AM PLTF'S MOTION TO WITHDRAW | | |
| | **EFILE DOCUMENT** | | |
| 12/11/2012 | NOTICE OF HEARING | | $0.00 |
| | HEARING FOR DEFTS REQUEST FOR ATTYS FEES ON 3/26/13 | | |
| | AT 4:15 PM | | |
| 12/06/2012 | NOTICE OF HEARING | OVERCASH WILLIAM TODD | $0.00 |
| | SET FOR 3/26/13 AT 4:15 PM, 4A, ON PLTFS MOTION TO WITHDRAW | | |
| | **EFILED DOCUMENT** | | |
| 10/31/2012 | MOTION FOR LEAVE TO WITHDRAW | OVERCASH WILLIAM TODD | $0.00 |
| | **EFILED DOCUMENT** | | |
| 02/02/2012 | MEMO FROM 5TH DCA | | $0.00 |
| 02/02/2012 | ORDER FROM 5TH DCA | | $0.00 |
| 01/10/2012 | ORDER VACATING | | $0.00 |
| | ORDER OF DECEMBER 16, 2011 | | |
| 12/23/2011 | ACKNOWLEDGMENT OF NEW CASE NO | | $0.00 |
| | DCA CASE 5D11-4427 FILED ON DECEMBER 9, 2011 | | |
| 12/22/2011 | MOTION TO VACATE | FOULTZ LORI ANN | $0.00 |
| | MOTION TO VACATE ORDER ON MOTION FOR REHEARING SIGNED | | |
| | DECEMBER 16, 2011 | | |
| 12/19/2011 | ORDER VACATING | FOULTZ LORI ANN | $0.00 |
| | ORDER ON MOTION FOR REHEARING - GRANTED. THE ORDER GRANTING | | |

| | | | |
|---|---|---|---|
| | DEFTS MOTION TO DISMISS IS VACATED. DEFTS MOTION TO DISMISS | | |
| | IS DENIED AND DEFT HAS 15 DAYS TO RESPOND. | | |
| 12/19/2011 | CORR/MEMO TO JUDGES OFFICE | OVERCASH WILLIAM TODD | $0.00 |
| | WITH COPY OF MOTION | | |
| 12/15/2011 | CORR/MEMO FROM CLERKS OFFICE | | $0.00 |
| | TO MS. MASTERS RE: NOTICE OF APPEAL | | |
| 12/12/2011 | ASM: APPEAL FF TO DCA/SC CA | OVERCASH WILLIAM TODD | $100.00 |
| 12/09/2011 | NOTICE OF APPEAL | OVERCASH WILLIAM TODD | $0.00 |
| 12/09/2011 | ASM: CERTIFIED COPY FEE CA | OVERCASH WILLIAM TODD | $2.00 |
| 12/09/2011 | ASM: COPY FEE CA | OVERCASH WILLIAM TODD | $2.00 |
| 12/01/2011 | ORDER DENYING MOTION | OVERCASH WILLIAM TODD | $0.00 |
| | PLTFS MOTION FOR REHEARING | | |
| 12/01/2011 | CORR/MEMO TO JUDGES OFFICE | FOULTZ LORI ANN | $0.00 |
| 11/15/2011 | CLS: CASE CLOSED | | $0.00 |
| 11/15/2011 | CLS: ORDER OF DISMISSAL | | $0.00 |
| | AMENDED ORDER GRANTING DEFTS MOTION TO DISMISS AND | | |
| | RESERVING JURISDICTION OVER ATTYS FEES PURSUANT TO SECTION | | |
| | 57.105 FL STATUTE (CORRECTING CASE STYLE) | | |
| 11/15/2011 | CORR/MEMO TO JUDGES OFFICE | FOULTZ LORI ANN | $0.00 |
| 10/28/2011 | RESPONSE TO MOTION | FOULTZ LORI ANN | $0.00 |
| | DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR REHEARING | | |
| 10/24/2011 | MOTION FOR REHEARING | OVERCASH WILLIAM TODD | $0.00 |
| 10/14/2011 | CORR/MEMO TO JUDGES OFFICE | FOULTZ LORI ANN | $0.00 |
| 09/15/2011 | NOTICE OF UNAVAILABILITY | OVERCASH WILLIAM TODD | $0.00 |
| | OCTOBER 21 TO OCTOBER 28, 2011 CHESTER J TROW | | |
| 04/13/2011 | ORDER TO RESPOND | | $0.00 |
| | TO DEFTS MOTIONS TO DISMISS AND FOR ATTYS FEES - | | |
| | PLTF HAS 15 DAYS TO RESPOND; AND, ORDER ESTABLISH- | | |
| | ING MOTION PRACTICE PROCEDURE | | |
| 04/12/2011 | RESPONSE TO MOTION | OVERCASH WILLIAM TODD | $0.00 |
| | PLAINTIFF'S RESPONSE TO THE DEFENDANT'S MOTIONS TO | | |
| | DISMISS AND FOR AWARD OF ATTORNEY'S FEES PURSUANT | | |
| | TO SECTION 57.105 FLORIDA STATUTES | | |
| 03/25/2011 | MOTION FOR AWARD OF ATTY FEES | FOULTZ LORI ANN | $0.00 |
| 03/04/2011 | MOTION TO DISMISS | FOULTZ LORI ANN | $0.00 |
| | DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT | | |
| | FOR ACCOUNTING AS BETWEEN TENANTS IN COMMON IN REAL | | |
| | PROPERTY WITH PREJUDICE AND MEMORANDUM OF LAW | | |
| 02/21/2011 | NOTICE OF APPEARANCE | FOULTZ LORI ANN | $0.00 |
| | MARK D SHELNUTT PA | | |
| 02/18/2011 | | | $0.00 |

Marion County Clerk of the Circuit Court
Case 9:13-cv-00808-ACC-PRL Document 3 Filed 12/30/13 Page 54 of 75 PageID 323
Page 4 of 4

|  |  |  |  |
|---|---|---|---|
|  | DELETED DOC NUMBER SHEET |  |  |
|  | DOCUMENT NUMBER 5 |  |  |
| 02/15/2011 | SUMMONS RETURNED SERVED |  | $0.00 |
|  | SERVED ON LORI ANN FOULTZ F/K/A LORI ANN OVERCASH |  |  |
|  | ON 02/03/11 |  |  |
| 02/15/2011 | NOTICE OF FILING | OVERCASH WILLIAM TODD | $0.00 |
|  | RETURN OF SERVICE ON LORI ANN FOULTZ |  |  |
| 01/31/2011 | SUMMONS ISSUED |  | $0.00 |
|  | LORI ANN FOULTZ FKA LORI ANN OVERCASH |  |  |
| 01/31/2011 | PETITION/COMPLAINT | OVERCASH WILLIAM TODD | $0.00 |
|  | CONTRACT & INDEBTEDNESS |  |  |
| 01/31/2011 | CIVIL COVER SHEET | OVERCASH WILLIAM TODD | $0.00 |
| 01/31/2011 | PETITION/COMPLAINT NO DOC# |  | $0.00 |
| 01/31/2011 | ASM: ISSUE SUMMONS-CA | OVERCASH WILLIAM TODD | $10.00 |
| 01/31/2011 | ASM:GENERAL CIRCUIT CIVIL CASE | OVERCASH WILLIAM TODD | $400.00 |

### Payments

| Date | Receipt # | Event | Party | Amount |
|---|---|---|---|---|
| 01/31/2011 | V-83713 | PAY:GENERAL CIRCUIT CIVIL CASE | OVERCASH WILLIAM TODD | $400.00 |
| 01/31/2011 | V-83713 | PAY: ISSUE SUMMONS-CA | OVERCASH WILLIAM TODD | $10.00 |
| 12/09/2011 | V-92032 | PAY: COPY FEE CA | OVERCASH WILLIAM TODD | $2.00 |
| 12/09/2011 | V-92032 | PAY: CERTIFIED COPY FEE CA | OVERCASH WILLIAM TODD | $2.00 |
| 12/12/2011 | V-92042 | PAY: APPEAL FF TO DCA/SC CA | OVERCASH WILLIAM TODD | $100.00 |

* bold records have been voided

www.MarionCountyClerk.org

IN THE CIRCUIT COURT, FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

WILLIAM TODD OVERCASH,

    Plaintiff,

vs.                     CASE NO.: 2011-304-CA-G

LORI ANN FOULTZ,
f/k/a/ LORI ANN OVERCASH,

    Defendant.

_____/

## WRIT OF BODILY ATTACHMENT

TO ALL AND SINGULAR SHERIFFS AND OTHER AUTHORIZED LAW ENFORCEMENT
PERSONNEL OF THE STATE OF FLORIDA

YOU ARE ORDERED TO TAKE INTO CUSTODY:    **WILLIAM TODD OVERCASH**
(see attached Description Sheet) and confine him in the county jail. The individual failed to comply
with the previous order of the court which is attached and incorporated herein.

**Service of this writ may be made on any day of the week and any time of the night or day,
including Sundays and holidays.**

YOU ARE FURTHER DIRECTED to bring this person before the court within 24 hours of
execution of the writ for a hearing to determine the individual's purge requirements and ability to
pay any such purge and, if so, whether the failure to pay such amount is willful.

NOTICE OF EXECUTION OF THIS WRIT SHALL IMMEDIATELY BE GIVEN TO THE
FOLLOWING:

1.    Office of the Honorable Jack Singbush.
2.    Plaintiff, William Todd Overcash
3.    Mark D. Shelnutt, Counsel for the Defendant

The Court previously found in this proceeding that the individual had the ability to pay said sum.
The Sheriff, or other authorize law enforcement personnel, executing this writ or having custody of
the individual is authorized to assess and collect the actual costs associated with the service of this
writ and transportation if the individual pursuant to Section 61.11(2)(a), *Florida Statutes*.

The Sheriff of Marion County, Florida shall immediately inform the individual named below upon
the Plaintiff, WILLIAM TODD OVERCASH, being taken into custody:

The Law Office of Mark D. Shelnutt, P.A.
1404 East Silver Springs Blvd.
Ocala, FL 34470
Phone: 352-629-6203

**THIS ORDER SUPERSEDES ALL PRIOR CONFLICTING ORDERS.**

**DONE AND ORDERED** in Marion County, Florida, this 22ND day of November, 2013.

JACK SINGBUSH
CIRCUIT COURT JUDGE

Copies furnished to:

Attorney for the Defendant, Mark D. Shelnutt, 1404 E. Silver Springs Blvd., Ocala, FL 34470

IN THE CIRCUIT COURT, FIFTH JUDICIAL CIRCUIT,
IN AND FOR MARION COUNTY, FLORIDA

WILLIAM TODD OVERCASH,

      Plaintiff,

vs.                                CASE NO.: 2011-304-CA-G

LORI ANN FOULTZ,
f/k/a/ LORI ANN OVERCASH,

      Defendant.

_____/

### COURT'S RULING ON AMENDED ORDER TO SHOW CAUSE

THIS CAUSE, having come before this Court on October 14, 2013, upon on the Defendant's Motion for Order to Show Cause, and the Court having entered an Amended Order to Show Cause, requiring the Plaintiff in Execution, WILLIAM TODD OVERCASH, to appear before this Court, and the Court having reviewed the file, having heard arguments of counsel for Defendant, and being otherwise duly advised in the premises, it is therefore

      ORDERED AND ADJUDGED:

      1.    The Plaintiff, WILLIAM TODD OVERCASH, shall have until November 20, 2013, to comply with the following:

          a.    Contact the Law Office of Mark D. Shelnutt, P.A., located at 1404 East Silver Springs Blvd., Ocala, Florida 34470, telephone number (352) 629-6203, within a reasonable period of time to schedule a date and time for his Deposition in Aid of Execution, and to bring with him all of the documents he was to bring with him previously. A copy of the required documents is attached hereto as Exhibit "A".

          b.    To provide a completed Fact Information Sheet, attached hereto as Exhibit "B" to this Order.

c.      The Defendant is to appear at the office of Mark D. Shelnutt, Esquire, a scheduled date

and time between now and November 20, 2013, that is agreed upon between the parties,

and **bring with him all the documents, and the sum of $1,330.00,** which represents

attorney's fees in the amount of $870.00, for 2.9 hours for attorney time, for the

reviewing of all documents in the setting of the depositions, time set aside for appearing

at the deposition, dictating and proofing of the motion of an order to show cause and

order to show cause, attending the hearing, and preparation of this order, and paralegal

fee in the amount of $230.00, for 2.3 hours of paralegal, for the drafting of documents

associated with the deposition, drafting of all documents associated with the motion and

order to show cause, setting of the deposition and hearing, and drafting of the order for

this hearing, and Court Reporter fees in the amount of $140.00, for the time for the

deposition and for time this hearing, and service of process fees in the amount of $90.00,

for the service of the subpoena for deposition and the service of the amended order to

show cause.

2.      Upon affidavit from the Counsel for the Defendant or Counsel for the Defendant that

the Plaintiff has not complied with the terms of this Order, the Court will issue a writ of bodily

attachment for the Plaintiff, WILLIAM TODD OVERCASH, to be held until he shows proof of

compliance with all the Ordered conditions.

**DONE AND ORDERED** in Chambers at Ocala, Marion County, Florida, this $\underline{24}$ day of

October, 2013.

_____
JACK SINGBUSH
Circuit Court Judge

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a conformed copy of the foregoing instrument was furnished by U.S. Mail this 24 day of October, 2013, to Mark D. Shelnutt, Esquire, 1404 East Silver Springs Blvd., Ocala, Florida 34470 and William Todd Overcash, 14311 SE 128th Street, Ocklawaha, Florida 32179.


_____
Judicial Assistant

IN THE COUNTY COURT, FIFTH JUDICIAL CIRCUIT,
IN AND FOR MARION COUNTY, FLORIDA

WILLIAM TODD OVERCASH,

     Plaintiff,

v.                              CASE NO.: 2011-0304-CA-G

LORI ANN FOULTZ,
f/k/a LORI ANN OVERCASH,

     Defendant.

_____/

### SUBPOENA DUCES TECUM FOR DEPOSITION

THE STATE OF FLORIDA

TO:    WILLIAM TODD OVERCASH
       14311 SE 128TH STREET
       OCKLAWAHA, FL 32179

     YOU ARE COMMANDED to appear before a person authorized by law to take depositions at the Law Office of Mark D. Shelnutt, P.A., 1404 East Silver Springs Blvd., Ocala, Florida 34470, on July 26, 2013, at 8:00 a.m., for the purpose of taking your deposition in this action and you are to have with you at that time and place the following:

                  SEE ATTACHED EXHIBIT "A"

     If you fail to appear, you may be in Contempt of Court. You are subpoenaed to appear by the following attorneys and unless excused from this Subpoena by these attorneys or the Court, you shall respond to this Subpoena as directed.

     DATED this _14th_ day of June, 2013.

                             MARK D. SHELNUTT, P.A.

                             By _____
                             Mark D. Shelnutt, Esquire
                             Florida Bar No.: 304042
                             Rebecca A. Guthrie, Esquire
                             Florida Bar No.: 0030028
                             1404 East Silver Springs Blvd.
                             Ocala, Florida 34470
                             Telephone: (352) 629-6203
                             Facsimile: (352) 401-9485
                             mshelnutt@shelnuttpa.com
                             skoerner@shelnuttpa.com



IN THE COUNTY COURT, FIFTH JUDICIAL CIRCUIT,
IN AND FOR MARION COUNTY, FLORIDA

WILLIAM TODD OVERCASH,

        Plaintiff,

v.                                  CASE NO.: 2011-0304-CA-G


LORI ANN FOULTZ,
f/k/a LORI ANN OVERCASH,

        Defendant.
_____/

## NOTICE OF TAKING DEPOSITION IN AID OF EXECUTION (DUCES TECUM)

TO:  WILLIAM TODD OVERCASH
     14311 SE 128ᵀᴴ STREET
     OCKLAWAHA, FL 32179

PLEASE TAKE NOTICE that on July 26, 2013, at 8:00 a.m., at the Law Office of Mark

D. Shelnutt, Esquire, 1404 East Silver Springs Blvd., Ocala, Florida, counsel for the Defendant will

take the deposition of the Plaintiff, WILLIAM TODD OVERCASH upon oral examination before

CAB Reporting, Court Reporters, or a Notary Public, in and for the State of Florida at Large, or

some other officer duly authorized by law to take depositions, and you must bring with you at that

time and place the following:

1. Copies of the federal and state income tax returns filed by you, together with accompanying work sheets including W-2 forms, copies of federal and state income tax returns and profit and loss statements for any and all corporations, joint ventures, partnerships or other corporate or business associations in which you held an interest during the past three (3) years and up to the date of this deposition.

2. All records indicating any and all income received by you from any and all sources for the last three (3) years and up to the date of this deposition.

EXHIBIT

3.   All employment information, including without limitation, wages, salaries, bonuses, stock options, commission earnings, income, employment contracts, pay raises, promotions, payroll deductions, other deductions of any kind, credit union accounts, pension plan, pension fund, retirement plan, retirement fund, stock plan, and stock fund and other benefits or deductions of any kind which are, were previously or which may be in the future paid, available, accepted, rejected, credited, offered, withheld for any purposes by and individual, agency, department, company or otherwise, or to which you are, were or may become entitled at anytime in the future, which you now have or which have accrued to you during the past three (3) years and up to the date of this deposition.

4.   Records that relate to any secured or unsecured personal loan made to you during the last three (3) years before the date of this deposition, whether from a member of your family, a banking institution or any individual or entity.

5.   All savings accounts, credit union or other passbooks of yours, including those held by you in your name or in your name jointly with any person or entity, or in your name as trustee for any other person, during the last three (3) years and up to the date of this deposition.

6.   All checking accounts in your name individually, with another, as trustee or guardian, or in which you may have an interest, including checkbooks or check registers, deposit slips, monthly statements and canceled checks (regardless of whether or not the account or accounts have been closed)for the last three (3) years and up to the date of this deposition.

7.   All records pertaining to real estate which you have acquired or may acquire an interest, including any leases or mortgages relating thereto (including monthly payments and present outstanding balance of principal and interest) together with any evidence showing all contributions in cash or otherwise made by you to the acquisitions or such real estate, for the last three (3) years and up to the date of this deposition.

8.   Copies of all sales agreements and/or options for any real estate owned by you and those held by you in your name or in your name jointly with any other person or in your name in trust or in your name as guardian for any other person, for the last three (3) years and up to the date of this deposition.

9.   Copies of any and all brokerage account statements or securities owned by you individually, jointly with any person or entity, or as trustee, guardian or custodian for the last three (3) years up to the date of this deposition.

10.  All records pertaining to the acquisition, transfer and sale of all securities during the last three (3) years and up to the date of this deposition, such records to include any

and all information relative to gains or losses realized from transactions involving such securities.

11.   Copies of any and all securities and investments owned by you and not reflected in any brokerage account records or statements, for the last three (3) years up to the date of this deposition.

12.   All records indicating all interests of any kind held by you in any and all corporations (foreign and domestic) or any other entities not evidenced by certificates or other instruments, for the last three (3) years up to the date of this deposition.

13.   All records pertaining to stock options in any corporation or other entity, exercised or not yet exercised, for the last three (3) years up to the date of this deposition.

14.   Copies of all mortgages, notes receivable or other evidence of debts due you individually or otherwise, executed or payable for the last three (3) years and up to the date of this deposition.

15.   All records of all estates of decedents from which benefits have been received, are being received or will be received by you, whether such trusts are revocable or irrevocable, for the last three (3) years up to the date of this deposition.

16.   All records of all estates of decedents from which you have received, are receiving or will receive any inheritance in either personal property, real property, assets, in trust or otherwise, or monetary assets, for the last three (3) years up to the date of this deposition.

17.   Copies of all financial statements, balance sheets and income statements received by you with respect to any and all proprietorships, joint ventures, partnerships, realty trusts, corporations or other legal entities in which you hold a legal or equitable ownership interest, individually or otherwise, during the last three (3) years and up to the date of this deposition.

18.   Copies of all partnership and/or joint venture agreements in which you are a party, for the last three (3) years up to the date of this deposition..

19.   Copies of declarations of trusts and minute books from all trusts to which you are a party, for the last three (3) years up to the date of this deposition..

20.   Copies of all corporate records (articles of incorporation, by-laws and minute books) for every corporation in which you have a legal or equitable ownership interest, for the last three (3) years up to the date of this deposition..

21. All books and records for the last three (3) years and up to the date of this deposition, showing any fringe benefits available to you from any business entity, in which you have a legal or equitable ownership interest, including without limitation, auto expenses, travel expenses, personal living and entertainment expenses, life insurance, bonuses, health, accident and hospitalization insurance.

22. All records and statements pertaining to any interest which you may have in any pension, retirement or profit-sharing plans, including copies of the plan, for the last three (3) years up to the date of this deposition..

23. Copies of all loan applications and statements of loan accounts for all loans applied for and/by you, whether or not taken or approved, during the last three (3) years and up to the date of this deposition.

24. Copies of any and all personal financial statements prepared by you, an accountant or any other person for you or for any business in which you have or had an interest during the last three (3) years and up to the date of this deposition.

25. All credit cards and charge accounts held by you and all statements and receipts received by you in connection with the use of such credit cards and charge accounts during the last three (3) years and up to the date of this deposition.

26. Any and all records pertaining to or being evidence of any current outstanding indebtedness, including any suits now pending or previously pending in any court whatsoever and all cases resolved without litigation or presently being negotiated, for the last three (3) years up to the date of this deposition.

27. Any and all documents, memorandum or writing relating to any interest you may have in real estate, whether as owner, co-owner, fiduciary, trust beneficiary (vested or contingent), partner, limited partner, shareholder, joint venturer, mortgagee, developer, manager or otherwise, for the last three (3) years up to the date of this deposition.

28. Copies of all trusts in which you may have a present or contingent interest, including the certificates, if any, indicating such interest, together with copies of all statements, receipts, disbursements, investment and other transactions during the last three (3) years and up to the date of this deposition.

29. Copies of all real estate mortgages held by your or by any entity (including but not limited to realty trust, partnerships or corporations) in which you have or had a present or contingent interest during the last three (3) years and up to the date of this deposition.

30. Life insurance policies or certificates of life insurance currently in existence insuring the life of any other person in which you are an owner or are named as either primary or contingent beneficiary, for the last three (3) years up to the date of this deposition.

31. All credit cards and charge accounts held by you and all statements and receipts received by you in connection with the use of such credit cards and charge accounts during the last three (3) years and up to the date of this deposition, together with a list of all businesses where you are authorized to charge purchases to the account of another person or entity.

32. A list of all household furniture, furnishings and antiques currently owned by you individually or jointly with any other person or entity, or which you have disposed of; such list to include the purchase price of such item, the source of the funds used to purchase each item, and the current fair market value of each item. If not appraisal figures are available, include your opinion of the fair market value, for the last three (3) years up to the date of this deposition.

33. All registrations to motor vehicles currently being used by you or which you disposed of, for the last three (3) years up to the date of this deposition.

34. All records pertaining to the transfer by sale or gift or otherwise of any personal property by you during the last three (3) years and up to the date of this deposition.

35. All records pertaining to gifts of any kind made by you to any person, firm, trust, corporation or other entity during the last three (3) years and up to the date of this deposition.

36. A list of all gifts received by you from any person or entity of a cost or value in excess of $300.00, including the amount and date of each such gift, from the period covering the last three (3) years and up to the date of this deposition.

37. All ledgers, books, accounts, cash receipt journals, accounts receivable, accounts payable and all other accounts kept or maintained by you (or under your supervision or direction) in connection with any business or businesses which you own or may have an interest in during the last three (3) years and up to the date of this deposition.

38. Any and all books, receipts, records, checks or other tangible evidence of charitable donations made by you or on your behalf during the last three (3) years and up to the date of this deposition.

39. All employment records pertaining to persons employed by you during the last three (3) years and up to the date of this deposition, including without limitation the names and addresses of such employees, the amount paid to each employee, the date of each payment and the nature of the services performed by each employee.

40. A list of the names and addresses of any and all proposed witnesses, and certified copies of all written reports rendered to you or your attorney by any such proposed expert witnesses.

41. Copies of any and all wills of a decedent and/or trust wherein you are named as a beneficiary, and/or wherein you are named as trustee and/or executor, including but not limited to the wills and/or trusts of your parents and/or close relatives, where the people are deceased and the probate of the estate is not complete and the estate is not closed, for the last three (3) years up to the date of this deposition.

42. All records pertaining to any account or accounts of every kind and nature whatsoever, including certificates of deposit, in which you have deposited or withdrawn funds or incurred debts or credits, during the last three (3) years and up to the date of this deposition.

43. Copies of all records of all transactions involving assets of any king, including without limitation, stocks, bonds, real and personal property of whatever nature and kind and wheresoever situated, held by others for your benefit during the last three (3) years and up to the date of this deposition.

The deposition is being taken for the purposes of discovery for use at trial, or for such other purpose as are permitted under the applicable and governing rules.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the appropriate Certified Process Server for service upon the Plaintiff this 14th day of June 2013.

*MARK D. SHELNUTT. P.A.*

By _____
Mark D. Shelnutt, Esquire
Florida Bar No.: 304042
Rebecca A. Guthrie, Esquire
Florida Bar No.: 0030028
1404 East Silver Springs Blvd.
Ocala, Florida 34470
Telephone: (352) 629-6203
Facsimile: (352) 401-9485
mshelnutt@shelnuttpa.com
skoerner@shelnuttpa.com

cc:   CAB Reporting

## EXHIBIT "B"

## FACT INFORMATION SHEET

Full Legal Name: _____

Nickname or Aliases: _____

Residence Address: _____

Mailing Address (if different): _____

Telephone Numbers: (Home)_____

(Business)_____

Name of Employer:_____

Address of Employer:_____

Position or Job Description:_____

Rate of Pay: $_____ per _____

Average pay check $_____ per _____

Average Commissions or Bonuses: $_____ per _____

Commissions or bonuses are based on _____

Other Personal Income: $_____ from _____

(Explain details on the back of this sheet or an additional sheet if necessary)


Social Security Number:_____ Birthdate:_____

Driver's License Number:_____

Marital Status:_____ Spouse's Name:_____

Spouse's Address (if different):_____

Spouse's Social Security Number:_____ Birthdate:_____

Spouse's Employer:_____

Spouse's Average Paycheck or Income $_____ per _____

Other Family Income: $_____ per _____ (Explain details on back of this sheet or an additional sheet if necessary.)


Names and Ages of All Your Children (and addresses if not living with you): _____

_____

_____

_____


Child Support or Alimony Paid $_____ Per _____


Names of Others You Live With:_____

Who is Head of Your Household? _____ You _____ Spouse _____ Other Person

Checking Account at:_____

Account #:_____

Savings Account at:_____

Account #:_____

(Describe all other accounts or investments you may have, including stocks, mutual funds, savings bonds, or annuities, on the back of this sheet or an additional sheet if necessary.)

For Real Estate (land) You Own or Are Buying:

Address:_____

All Names on Title:_____

Mortgage Owed to:_____

Balance Owed:_____

Monthly Payment: $_____

(Attach a copy of the deed or mortgage, or list the legal description of the property on the back of this sheet or an additional sheet if necessary.  Also provide the same information on any other property you own or are buying.)

For All Motor Vehicles You Own or Are Buying:

Year/Make/Model:_____

Color:_____ Vehicle ID#:_____

Tag No:_____ Mileage:_____

Names on Title:_____

Present Value: $_____

Loan Owed to: _____

Balance on Loan: $_____

Monthly Payment: $_____

(List all other automobiles, as well as other vehicles, such as boats, motorcycles, bicycles, or aircraft, on the back of this sheet or an additional sheet if necessary.)_____
_____
_____
_____

Have you given, sold, loaned, or transferred any real or personal property worth more than $100.00 to any person in the last year?  If your answer is "yes", describe the property and sale price, and give the name and address of the person who received the property.

Does anyone ow you money?  Amount Owed: $_____

Name and Address of Person Owing Money:_____
_____

Reason money is owed:_____

Please attach copies of the following:

     a. your last pay stub

     b. your last 3 statements for each bank, savings, credit union, or other financial account.

c.  your motor vehicle registrations and titles.

d.  any deeds or titles to any real or personal property you own or are buying, or leases to property you are renting.

UNDER PENALTY OF PERJURY, I SWEAR OR AFFIRM THAT THE FOREGOING ANSWERS ARE TRUE AND COMPLETE.

_____

Judgment Debtor

STATE OF FLORIDA
COUNTY OF _____

The foregoing instrument was acknowledged before me on _____,
by _____, who is personally known to me or has produced
_____ as identification and who did/did not take an oath.

WITNESS my hand and official seal, on this _____ day of _____, 2013.

_____

Notary Public

State of Florida
My Commission Expires:_____

MAIL OR DELIVER THIS FORM TO THE CLERK OF THE COURT, AND MAIL OR DELIVER A COPY OF THE COMPLETED FORM TO THE JUDGMENT CREDITOR OR THE CREDITOR'S ATTORNEY.

# Exhibit E:
# Defendant William Todd Overcash's Curriculum Vitae

Curriculum Vitae
01/01/2010


Wm. Todd Overcash, MD

Address:            14311 SE 128th St
                    Ocklawaha, Fl 32179

Telephone:   Cell:   352-812-8819 (preferred)
             Home  352-288-0330

Email:              woverc7507@aol.com

Place of Birth:     Albemarle, NC

Medical License:    Florida
                    North Carolina

Certification:  American Board of Surgery:  General Surgery

Society Memberships:        Florida Medical Association
                            North Carolina Medical Association
                            Marion County Medical Society
                            SAGES
                            Florida Surgical Society
                            Society of Laparoscopic Surgeons
                            American Society of Bariatric Surgeons

Committees:                 Previous Director of Bariatrics:  MRMC is a Center of Excellence
                            for Bariatric Surgery
                            Task Force for OR improvement
                            Liaison for Value Analysis Purchasing Dept.
                            Board of Directors Ambulatory Surgery Center
                            Director of Hernia Clinic of Central Florida
                            Physician Champion for Surgical Nurses and Dietary Dept.


Range of Practice Expertise: General Surgery
                            Vascular Surgery: Full Vascular Experience and certified to read
non invasive vascular labs
                            Endoscopy: Full upper and Lower Endoscopy Certified
                            NOTES Surgery:  Esophyx and Stomaphyx  I am a designated
National Instructor on EsophyX and StomaphyX and have trained approximately 100 Surgeons
from across the US.
                            Bariatric Surgery

Advanced Laparoscopic Surgery:  Heller Myotomy, Nissen, Adrenal, Hernia (inguinal, and incisional), Colon Resections, Toupe, Dor, Nephrectomy, RNY Gastric Bypass, Gastric Tumor Resection.  I am an advanced Laparascopic Surgeon and have trained and helped many surgeons. I have done over 1200 laparascopic hernias, Over 1000 anti-reflux procedures, 100 gastric tumors, 50 colon resections, 50 adrenals, etc.

Breast Surgery

Terminal Patients and Care of those affected (in light that both of my parents have died of Lung Cancer and my constant contact with terminal patients)

Current Certifications:          ACLS, BLS, PALS, and plan to renew my ATLS this spring

Educational Background:

Albemarle Sr. High School:

|  | |
|---|---|
| Honors: | Honor Society |
| | Math Team |
| | Yearbook Staff |
| | Chief of Photography |
| | Governor's School |
| | Outstanding Spanish Student |
| | Valedictorian |

NC State University:  BS Zoology

|  | |
|---|---|
| Honors: | Gamma Delta Society |
| | Dean's List |
| | Peer Advisor for Life Science Students |
| | Alpha Epsilon Delta Honor Society |
| | President of Alpha Epsilon Delta |
| | Vice President School of Ag-Life |
| | President of School of Ag-Life |
| | Member of Dean's Council |
| | President of Pre-Med/Dent Club |
| | Outstanding Pre-Med/Dent Student |
| | Chairman of Re-Organization Committee of "The Brain Plower" |
| | TA:    Comparative Anatomy |
| | Histology |
| | Cum Laude |
| | Counselor at summer camps for Autistic Children |

Research:      Transposons

Publication:  2 years ago I paper published on treatment of Gastric Fistulas post RNY via transoral technique and I have 3 papers being submitted for publication: 1.  Revision

RNY, 2. Transoral Refulx Procedures in Patients with large Hiatal Hernias, 3. Reversal/treatment of Patients s/p Ileal/Jejunal Bypass Surgery

In approximately 2 weeks I am submitting papers on the following subjects:
  1. Treatment of patients who have previously had Ileo-Jejunal Bypass Surgery as requested by the Chairman of Bariatrics at Methodist Hospital Houston, Tx

I was one of the 6 Faculty for a Revision RNY course conducted at Methodist Hospital in Dallas, Tx in November of 2008
UNC Chapel Hill School of Medicine: 1984-1988

Post Graduate Training:

| | | | |
|---|---|---|---|
| PGY 1 General Surgery | University Hospital | Jacksonville, Fl | 1988-1989 |
| PGY 2 General Surgery | University Hospital | Jacksonville, FL | 1989-1990 |
| PGY3 General Surgery | University Hospital | Jacksonville, Fl | 1990-1991 |
| PGY4 General Surgery | Carolina's Medical Ctr | Charlotte, NC | 1991-1992 |
| PGY5 General Surgery | Carolina's Medical Ctr | Charlotte, NC | 1992-1993 |

Honors:        Outstanding Laparoscopic Resident 1992-1993

Research:      Percutaneous vs. Open Tracheotomy
               Laparoscopy in Penetrating Trauma

Fellowship: Plastic Surgery  St. Joseph's Medical Ctr.      Houston, TX  7/93-9/93
I left the fellowship to enter a Vascular/Cardiothoracic Fellowship at CMC, however, due to my Father's diagnosis of Lung Cancer, I did not enter the fellowship and elected to spend several months at his side.

I entered Private Practice in April 1994 in Ocala, Fl

Outside of Medicine I have a broad interest base which includes:

Water Activities:      Skiing, Jet Skis, Scuba, Fishing
Outdoor Activities:    Horses, yard work, being on a farm

I have extensive experience in setting protocols, cost containment, and scientifically based medical practice to achieve best practice outcomes.

Please feel free to contact me directly at any time at 352-812-8819 cell phone

# Exhibit F:
# Notice of $43,000.00
# Attorney's Fees Enforcement
# Action (Served 4 December 2013)

Electronically Filed 12/03/2013 09:33:10 AM E1

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

IN RE: The Former Marriage of:                                        CASE NO.: 2002-4655 DR-FJ

WILLIAM TODD OVERCASH,
　　　　　　Former Husband,

and

LORI ANN FOULTZ
f/k/a LORI ANN OVERCASH,
　　　　　　Former Wife.

_____/

## NOTICE OF SPECIFIC RELIEF REQUESTED

COMES NOW, the Former Wife, LORI ANN FOULTZ, by and through her undersigned counsel, and files this her Notice of Specific Relief Requested as required by the Court's Standing Family Law Court Order and states:

1.　　ATTORNEY'S FEES

The Former Wife is requesting that the Husband contribute to her attorney's fees in the sum of $43,116.35, which is currently owed to Counsel for the Former Wife as of the filing of this Notice of Specific Relief Requested.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by Email delivery to Robert E. Taylor, Jr., Esquire, robert@rtaylorlaw.com and sonja@rtaylorlaw.com, this 25 day of December, 2013.

*MARK D. SHELNUTT, P.A.*

By_____
Mark D. Shelnutt, Esquire
Florida Bar No.: 304042
Rebecca A. Guthrie, Esquire
Florida Bar No.: 0030028
1404 East Silver Springs Blvd.
Ocala, Florida 34470
Telephone: (352) 629-6203
Facsimile: (352) 401-9485
mshelnutt@shelnuttpa.com
skoerner@shelnuttpa.com
Attorneys for the Former Wife

*** FILED: MARION COUNTY, FL DAVID R. ELLSPERMANN, CLERK 12/3/2013 09:33:09. ***