FILED

# UNITED STATES DISTRICT COURT

2014 FEB 24 PM 12: 50

# MIDDLE DISTRICT OF FLORIDA

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA

# OCALA DIVISION

WILLIAM TODD OVERCASH          CASE NO. 5:13-cv-606-ACC-PRL

Plaintiff,

V.

MARK SHELNUTT, LORI A. FOULTZ and

HON. SENIOR JUDGE BARBARA GURROLA

Defendants.

---

Wm. Todd Overcash comes now with presentation of further evidence of violation of his civil rights.

Please see attached court transcript whereby Judge Gurrola stated that unless all actions were achieved, then the whole agreement would become null and void.

Judge Gurrola also stated on the record that Wm. Todd Overcash should cease his disability and return to work. Refusal to accept his disability by the court.

Setting of the case:

Judge Gurrola had made statement in court (i.e., by law is an order) in violation of accepted Pre-nuptial agreement to pay opposing attorneys prior to feeding his animals, paying property taxes, or paying his own council. Judge Gurrola had failed to uphold State Law when Judge Swigert was removed from the case by the Florida 5th DCA after a 10 month time frame.

During this time frame Judge Swigert had issued multiple orders after filing for his recusal which by Florida Law becomes null and void upon recusal. Judge Gurrola ignored state statute as raised by Attorney Beth Gordon and proceeded to issue an order for penalties in excess of Wm. Todd Overcash's disability income or face jail or directed him to return to work.

Wm. Todd Overcash borrowed money from multiple individuals and paid the penalty after the issue of arrest. The arrest warrant was resolved 2 weeks prior to attach hearing. However, prior to start of hearing Judge Gurrola directed bailiff to arrest Wm. Todd Overcash in the halls of the courthouse. Attorney Beth Gordon intervened and stopped the act.

Judge Gurrola then proceeded to inform Wm. Todd Overcash in the courtroom that he faced more jail time due more opposing counsel fees that would be awarded.

Wm. Todd Overcash was offered the opportunity to avoid this scenario if he would raise money to fully pay off his former wife (in violation of a standing agreement) and forfeit his rights to his daughter.

The documents were immediately prepared and Wm. Todd Overcash was forced under duress and fear of further punishment for being disabled to forfeit his rights.

However, as detailed by Beth Gordon, If all terms could not be achieved, then the whole agreement would cease and Judge Gurrola stated yes as did opposing counsel. Wm. Todd Overcash was not able to achieve the terms, however, Judge Gurrola proceeded without due process due to her bias against a disabled man.

                                      Respectfully submitted,

                                      Wm. Todd Overcash

                                      14311 SE 128th St

                                      Ocklawaha, FL 32179

                                      352-812-8819

F define Ethical Grounds for Disqualification Canon 3E of the Code of Judicial Conduct provides that a judge should recuse himself/herself in a proceeding in which his/her impartiality might reasonably be questioned.

A. Judge Gurolla's impartiality is clearly non existent based on:

1. Judge Gurrola stated off the record on September 10, 2012 hearing that both parties have a right to request recusal due to a personal relationship with Dr. Ford; however, Judge Gurrola failed to clearly state the extent of the issues. Beth Gordon is prepared to testify to this discussion.

    a. If a judge offers to recuse himself/herself, he/she must follow through, even if the offer is not accepted promptly. Failure to grant a motion for recusal following the judge's offer to recuse is reversible error. <u>Funt v. Nadler,</u> 530 So.2d 1107 (Fla. 3rd DCA 1988); <u>Pistorino v. Ferguson,</u> 386 So.2d 65 (Fla. 3rd DCA 1980).

    b. In light of the events of the court, it is clear that Judge Gurrola's offer of recusal is now accepted and must be granted.

2. Of clear concern is Judge Gurrola's refusal to honor her own court orders. As noted in the July 15, 2013 transcript which clearly shows bias so severe that she will not honor her own court orders. Hearing July 15, 2013 page 17, lines 2-19

> Ms. Gordon: Yes. And I want to make very
>
> Certain—and I know Dr. Overcash know this, but
>
> This agreement is pretty much dependent on each of
>
> The terms being satisfied. In other words, they
>
> Want him, today, to sign the rights away to the
>
> Child, his parental rights. But, I mean, if this
>
> Falls through and like Mr. Shelnutt was saying, the
>
> 20,000 would then revert to pay towards the
>
> Equitable distribution, then the adoption process
>
> Would be stopped. So the whole deal is
>
> Dependent on its parts ---
>
> The Court: I think that's basically what
>
> Mr. Shelnutt said, and the Court recognizes that.
>
> Mr. Shelnutt: And to the extent Ms. Gordon
>
> Thinks that the agreement is severable, no, I
>
> Agree, I think this is a package deal. It all gets
>
> Done or nothing gets done. And the other thing –
>
> I'm sorry, Ms. Gordon.

I was unable to fulfill the agreements that we signed, however, Judge Gurrola

proceeded to allow termination of my parental rights despite my objection to

this action sighting the above court records.

Judge Gurrola has allowed Mark Shelnutt to act on outstanding "fees" that were not satisfied due to Wm. Todd Overcash's inability to fulfill his portion of the agreement and has issued warrants for his arrest and has allowed termination of his parental rights and adoption of his daughter in violation of the agreement.

Wm. Todd Overcash was under clear duress the day of this hearing due to Judge Gurrola ordering the Bailiff to arrest him prior to the hearing. Judge Gurrola had previously ordered his arrest shortly after the original agreement for psychological evaluation for more attorney fees and on the day of this hearing, Mark Shelnutt was asking for additional money and had moved for another arrest of Wm. Todd Overcash. Wm. Todd Overcash was placed under extreme duress by the actions of Judge Gurrola and therefore he agreed to forfeit his rights. Wm. Todd Overcash was concerned about his ability to meet the financial agreements of this action and had been warned by Beth Gordon that he faced jail if he did not just walk away. William Todd Overcash had no desire to abandon his daughter, however, Judge Gurrola in coordination with Mark Shelnutt and DCF committed a RICO act to essentially leave Wm. Todd Overcash without the financial or emotional ability to stand up for his constitutional parental rights.

1  Associates, I have to maintain as a corporation.
2  Because I am uninsurable, except under a group policy,
3  and Natasha is uninsurable, except under a group
4  policy. Therefore, I keep the corporation viable,
5  thereby I am able to afford health insurance.
6  BY MS. GORDON:
7  Q   Do you get a group policy?
8  A   I have to do a group policy for the two of us.
9  Q   Now, if you got rid of Surgical Associates and
10 didn't show it as having viable operations, would you be
11 able to get an insurance policy?
12 A   Uninsurable.
13 Q   Why is that? Have you had an operation?
14 A   I've had brain surgery which has affected my
15 short-term memory on numbers.
16 Q   So when Mr. Shelnutt was basically questioning you
17 as to what the numbers are and it was very frustrating to
18 you, you couldn't come up with numbers, is that something
19 that's a result of your operation?
20 A   It is. If I work hard and long on certain
21 numbers, I can start remembering. And it's gotten better.
22 And that's why I went through a phase where I did a specific
23 set of ballroom dancing to help trigger a certain part of my
24 memory phase.
25 Q   Where did you have that surgery done?

1  A   Carols Medical Center; Charlotte, North Carolina.
2  Q   And what year did you have that done?
3  A   2008.
4  Q   Now, you remember that, but if I asked you, How
5  much did the surgery cost, can you remember that?
6  A   I have no idea.
7  Q   Okay. So it doesn't affect your ability to
8  remember dates?
9  A   It affects certain things with certain numbers; I
10 can't help that.
11 Q   Okay. Are you current on your child support, sir?
12 A   I am.
13 Q   Okay. Have you gone to the court and gotten a
14 copy of your case history on child support?
15 A   Yes.
16     MS. GORDON: Your Honor, I'd like to submit to the
17 Court a certified copy from downstairs of the current
18 child support.
19     THE COURT: Show it to Mr. Shelnutt.
20     MR. SHELNUTT: Sure.
21     MS. GORDON: It's three pages. And one is the --
22 the top is, I think, August, and the bottom is more
23 stuff.
24     MR. SHELNUTT: I don't have any objection
25 whatsoever.

```
 1    these other things.
 2         So, you know, please, we're entitled to attorney's
 3    fees and ask -- and he owes Ms. Foultz $4,100 in back
 4    payments for equitable distribution.
 5         So that's where we are, Your Honor.
 6         THE COURT:  Yeah, go ahead.
 7         MS. GORDON:  Consistent with Rosen vs. Rosen, need
 8    and ability to pay are very important.  Counsel is very
 9    flippant as to Dr. Overcash's ability to talk about
10    numbers.
11         I would submit to the Court, no one undergoes
12    brain surgery for a tumor -- it's not funny Ms. Over-
13    -- I mean, you know, when people laugh about that it
14    really kind of tugs my heartstrings because I don't
15    think a surgeon at the top of his game...
16         THE COURT:  I'm sorry.  I didn't -- she laughed?
17         MS. GORDON:  Yes, she did.
18         THE COURT:  I didn't see that.
19         MS. GORDON:  She laughed.
20         THE COURT:  She should not have done that.
21         MS. GORDON:  No.  It happens every time, Your
22    Honor.  So for me, forgive me...
23         THE COURT:  Well, I mean, I've watched your client
24    for the last four hours, as well, so -- let's move on
25    here.
```

1    MS. GORDON: The problem is, we have a surgeon
2    here who is at the top of his game -- I know how they
3    are, my dad was a surgeon. They want to do stuff and
4    they can't accept the fact that they can't work
5    anymore. Now, would you want to be operated on by a
6    surgeon who had brain surgery himself? He, very
7    wisely, I believe, took -- chose to go with his
8    disability policy, okay. Can he still practice
9    medicine? At a later date, quite possibly -- probably
10   can. All right. But right now he's no longer doing
11   surgery. There's nothing funny about that.
12        Yeah, he's getting $12,000, but they look at him
13   all the time: Can you now do it? Are you going to do
14   it next month? We don't want to pay this 12,000 a
15   month anymore.
16        So we have a guy who was spread very thin in the
17   county of Marion, to begin with, as a young surgeon.
18   Big house, lake house, mamma's house with ten acres and
19   horses, daughter riding horses. And then guess what,
20   you have a brain tumor. You have to go to Duke or
21   Carolina and have that, you know -- and thinking he was
22   going to die. So, you know, those are very real
23   issues.
24        So, yes, you know, are you going to sell the
25   horse, are you going to do these things? Well, quite



## Fifth District Court of Appeal

| Case List | Case | Docket | File Document | Pending Filings | Rejected Filings | My Profile | Logoff |

Case No: SD [ ]  Search

**11-3689**

**WILLIAM TODD OVERCASH**
**vs**
**LORI ANN OVERCASH, N/K/A LORI ANN FOULTZ**

Date Filed: 11/03/2011   Status: Closed   Proceeding: Petition
Type: Prohibition   Category:   Circuit: 5th Judicial Circuit

**Parties:**
FOULTZ, LORI
OVERCASH, LORI
OVERCASH, WILLIAM

**Additional Parties:**
MARION, CLERK
SWIGERT, HON. WILLIAM

**Attorneys:**
GORDON, BETH
MARSH, ROSE
RUSSELL, CHERI
SHELNUTT, MARK

| Date | Disposition | Manner | Note |
|---|---|---|---|
| 12/07/2011 | Denied | Order by Judge | |
| 06/29/2012 | Granted | Authored Opinion | |

Recusal of Swigert
Filed to app 11th
12/7/11

10/10/11 through 6/29/12
Swigert attacks me
& removed rights
without a motion + Swigert gashis on
brain surgery

2/24/2014